[No. D022106. Fourth Dist., Div. One. Jan. 28, 1997.]

CHARLES S. LıMANDRI, Plaintiff and Appellant, v.
GREG D. JUDKINS, Defendant and Respondent.

**COUNSEL**

Charles S. LiMandri, in pro. per., and R. Timothy Ireland for Plaintiff and Appellant.

Klinedinst, Fliehman, McKillop & Jones and Douglas Alan Pettit for Defendant and Respondent.

**OPINION**

**BENKE, Acting P. J.**—Plaintiff Charles S. LiMandri appeals from a judgment of dismissal entered after the court sustained defendant Greg D. Judkins's demurrer to LiMandri's complaint without leave to amend as to all causes of action.[1]

---

[1]LiMandri's notice of appeal actually states he is appealing the court's order sustaining the demurrer and order denying his motion for reconsideration of the ruling on the demurrer. Neither of these orders is appealable. (*Hebert* v. *Los Angeles Raiders, Ltd.* (1991) 23 Cal.App.4th 414, 418, fn. 1 [29 Cal.Rptr.2d 540]; *Rojes* v. *Riverside General Hospital* (1988) 203 Cal.App.3d 1151, 1160-1161 [250 Cal.Rptr. 435], overruled on another point in *Passa-*

## FACTUAL AND PROCEDURAL BACKGROUND

Because this is an appeal of a judgment of dismissal entered after the sustaining of a general demurrer, ". . . we accept as true all the material allegations of the complaint." (*Shoemaker* v. *Myers* (1990) 52 Cal.3d 1, 7 [276 Cal.Rptr. 303, 801 P.2d 1054, 20 A.L.R.5th 1016].) LiMandri's complaint discloses the following facts.

LiMandri represented multiple plaintiffs in litigation arising out of environmental contamination of 34 acres of real property owned by the plaintiffs. The litigation consisted of a state court action, Sesi v. Signal Landmark, Inc. (Super. Ct. San Diego County, No. 624243), and an action brought by the same plaintiffs against Signal Landmark, Inc., and others in federal district court under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA). (42 U.S.C. § 9601 et seq.) Among the plaintiffs represented by LiMandri were Wadie and Mary-Lynn Deddeh (the Deddehs). The plaintiffs and LiMandri entered into a written fee agreement whereby LiMandri was to be paid $75 per hour for his services in addition to 20 percent of any recovery the plaintiffs might obtain.

In early February 1992, while the state action was pending, Judkins contacted LiMandri and told him he was counsel for Security Trust Company (Security) and that Security had extended a loan in the amount of $1,450,000 to the Deddehs. The loan was made through Security by an investor group and was arranged by Dendy Real Estate and Investment Company, Inc. (Dendy). Judkins asked LiMandri about the status and settlement value of the pending state action and specifically asked him about his fee arrangement with the plaintiffs. Judkins did not tell LiMandri that the Deddehs, in connection with the loan transaction, had granted Security a lien against their share of any judgment or settlement proceeds obtained in the state action against Signal Landmark.

On March 30, 1992, Judkins filed a notice of lien in the state court action. The notice of lien provided: "Any and all proceeds from this action, including any settlement payments or proceeds of any amounts paid in full or partial satisfaction of any judgment obtained in this action, otherwise payable to Mr. and Mrs. Wadie Deddeh, or either of them, shall be paid directly to Security Trust Company." Although LiMandri had no knowledge of

---

vanti v. *Williams* (1990) 225 Cal.App.3d 1602, 1605 [275 Cal.Rptr. 887].) In the interest of the orderly administration of justice, we construe the notice of appeal liberally in favor of its sufficiency (Cal. Rules of Court, rule 1(a)) and interpret it to apply to the judgment rather than the nonappealable orders. (*Hebert* v. *Los Angeles Raiders, Ltd., supra*, 23 Cal.App.4th at p. 418, fn. 1; *Federer* v. *County of Sacramento* (1983) 141 Cal.App.3d 184, 185 [190 Cal.Rptr. 187].)

Security's lien until its notice of lien was filed, the notice of lien appeared to have been prepared by LiMandri himself, as it bore his name, address and state bar number.

In April 1992, a judgment was entered in the state court action awarding the Deddehs and their coplaintiffs damages in the amount of $2.5 million. Signal Landmark filed a notice of appeal of that judgment. However, in April 1993, under the supervision of a federal magistrate, the Deddehs and their coplaintiffs entered into a settlement agreement with Signal Landmark whereby Signal Landmark paid $2.5 million to settle both the state action and its involvement in the federal CERCLA action. Half of that amount plus 6 percent interest was to be paid in cash to the plaintiffs and their attorney; the remaining half plus 6 percent interest was to be paid into a trust account and used for the remediation of the subject contaminated property.

As a result of Security's lien and notice of lien filed in the state action, the settlement agreement was amended to require Signal Landmark to bring an interpleader action in federal district court and deposit the Deddehs' share of the settlement funds ($543,972.60) with the court in an interpleader account without any prior payment to LiMandri of the Deddehs' share of his attorney fees. The interpleader action tied up fees owing to LiMandri from the Signal Landmark litigation for over seven months and caused him to incur over $110,000 in fees and costs.

Based on these facts, LiMandri filed the instant action against Judkins and other attorneys who allegedly represented Security in connection with its loan to the Deddehs.[2] LiMandri's complaint asserted four causes of action: fraud and deceit based on suppression of fact; negligent failure to disclose and suppression of fact; intentional interference with prospective economic advantage; and negligent interference with prospective economic advantage.

The court sustained Judkins's general demurrer without leave to amend as to all causes of action and denied LiMandri's subsequent motion for reconsideration of that ruling.

## DISCUSSION

In reviewing a judgment of dismissal following the sustaining of a general demurrer without leave to amend, our task "is to determine whether the complaint states, or can be amended to state, a cause of action. For that purpose we accept as true the properly pleaded material factual allegations of the complaint, together with facts that may properly be judicially noticed.

---

[2]LiMandri voluntarily dismissed the other named defendants.

[Citations.]" (*Crowley* v. *Katleman* (1994) 8 Cal.4th 666, 672 [34 Cal.Rptr.2d 386, 881 P.2d 1083].)

I

*Liability for Nondisclosure*

■ In his first and second causes of action, LiMandri seeks to hold Judkins liable for intentionally or negligently failing to disclose the following facts to LiMandri during the parties' February 1992 conversation: (1) Security was claiming an interest in the judgment or settlement proceeds obtained in the state court action; (2) Security intended to assert superior lien rights to the Deddehs' share of such proceeds; (3) Judkins had prepared the notice of lien bearing LiMandri's name and state bar number and intended to file it in the state action; and (4) Judkins was taking active steps on behalf of Security to interfere with LiMandri's contractual fee arrangement with his clients in the state and federal actions. Regarding LiMandri's nondisclosure causes of action, the court ruled: "Notwithstanding considerations of professional courtesy and ethical obligations, attorneys for the lien claimant [Security] were under no legal duty to advise [LiMandri] of an intention to assert superiority of the lien."

■ There are "four circumstances in which nondisclosure or concealment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts. [Citation.]" (*Heliotis* v. *Schuman* (1986) 181 Cal.App.3d 646, 651 [226 Cal.Rptr. 509].) None of these circumstances apply in the instant case.

■ Clearly, there was no fiduciary relationship between Judkins as counsel for Security and LiMandri as counsel for the Deddehs.[3] Each of the other three circumstances in which nondisclosure may be actionable presupposes the existence of some other relationship between the plaintiff and

---

[3]LiMandri contends Judkins owed him a duty of disclosure because of the fiduciary duties owed to the Deddehs by Dendy, the broker arranging Security's loan to them. LiMandri asserts that Judkins was an agent of Dendy and therefore owed the Deddehs the same duty of disclosure Dendy owed them. Since LiMandri was the Deddehs' "agent" in the Signal Landmark litigation, he argues Judkins had a duty to make full disclosure *to the Deddehs* through him. Assuming arguendo these factual contentions are true and adequately pleaded by LiMandri, *they do not establish a right of action on the part of LiMandri against Judkins for nondisclosure*, as Judkins's asserted duty of disclosure was owed to the Deddehs, not LiMandri. If LiMandri was only entitled to disclosure as the Deddehs' agent, he lacks standing to assert claims personal to him for breach of a duty of disclosure owed to his principals, the Deddehs.

defendant in which a duty to disclose can arise. As set forth in BAJI No. 12.36 (8th ed. 1994), "where material facts are known to one party and not to the other, failure to disclose them is not actionable fraud unless there is *some relationship* between the parties which gives rise to a duty to disclose such known facts." (Italics added.)

As a matter of common sense, such a relationship can only come into being as a result of some sort of *transaction* between the parties. (See *Warner Constr. Corp.* v. *City of Los Angeles* (1970) 2 Cal.3d 285, 294 [85 Cal.Rptr. 444, 466 P.2d 996] ["In *transactions* which do not involve fiduciary or confidential relations, a cause of action for non-disclosure of material facts may arise in at least three instances" (italics added)]; *Goodman* v. *Kennedy* (1976) 18 Cal.3d 335, 347 [134 Cal.Rptr. 375, 556 P.2d 737] ["duty of disclosure . . . may exist when one *party to a transaction* has sole knowledge or access to material facts and knows that such facts are not known to . . . *the other party" (italics added)*].) Thus, a duty to disclose may arise from the relationship between seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual agreement. (Civ. Code,[4] § 1572, subd. 3.) All of these relationships are created by transactions between parties from which a duty to disclose facts material to the transaction arises under certain circumstances.

The fundamental problem with LiMandri's nondisclosure causes of action is that he alleges no such transaction or relationship with Judkins. The only "transaction" underlying LiMandri's nondisclosure claims is the February 7, 1992, conversation in which Judkins asked LiMandri about the state court action against Signal Landmark. LiMandri alleges no existing or anticipated contractual relationship or any other relationship with Judkins that would give rise to a duty to disclose.

It is noteworthy that section 1572, one of two California statutes codifying the elements of a fraud cause of action, applies only to fraud "committed by a party to the *contract* . . . with intent to deceive another party thereto, or to induce him to enter into the contract." (Italics added.) Clearly, the fraud allegations in LiMandri's complaint do not fall within the purview of section 1572, as they establish no contractual or precontractual relationship between LiMandri and Judkins.[5]

Moreover, the duty of disclosure LiMandri seeks to impose on Judkins is negated by Judkins's attorney-client relationship with Security. In *Heliotis* v.

---

[4] All further statutory references are to the Civil Code.

[5] The other statute codifying the elements of common law fraud is section 1710, which defines "deceit" within the meaning of preceding section 1709. Section 1709 provides: "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damages which he thereby suffers." LiMandri does not allege he was induced to alter his position as a result of Judkins's failure to disclose his intent to assert

*Schuman, supra,* 181 Cal.App.3d 646, the appellate court refused to extend a real estate broker's duty of disclosure to an attorney representing the sellers of real property. The court stated: "The imposition of a duty to disclose on an attorney who merely acts as a conduit for sellers in a real estate transaction . . . would compromise the underpinnings of the attorney-client relationship—an attorney's duties to his or her client to keep confidences, to zealously represent the client, and to give undivided loyalty to the client. [Citations.] [The attorney] owed his allegiance solely to the [sellers], his clients." (*Id.* at pp. 650-651.) In the present case, while Judkins's assertion of lien rights on behalf of Security may render him liable for intentionally interfering with LiMandri's contractual relations, as discussed *post*, his duty of undivided loyalty to Security, his client, superseded any duty on his part to disclose information to LiMandri regarding the Security-Deddeh loan transaction.

LiMandri's nondisclosure causes of action are further problematic in that they essentially seek to hold Judkins liable for failing to disclose his intention to wrongfully assert the superiority of Security's lien rights. Since Judkins's wrongful assertion of superior lien rights on behalf of Security is the basis for LiMandri's cause of action for intentional interference with prospective economic advantage, LiMandri's theory, in essence, is that Judkins owed him a duty to disclose his intention to commit an intentional tort. Although "inferentially, everyone has a duty to refrain from committing intentionally tortious conduct against another" (*Cicone* v. *URS Corp.* (1986) 183 Cal.App.3d 194, 201 [227 Cal.Rptr. 887]), it does not follow that one who intends to commit a tort owes a duty to disclose that intention to his or her intended victim. The general duty is not to warn of the intent to commit wrongful acts, but to refrain from committing them. We are aware of no authority supporting the imposition of additional liability on an intentional tortfeasor for failing to disclose his or her tortious intent before committing a tort.

The court properly dismissed LiMandri's first and second causes of action on the ground Judkins owed LiMandri no duty to disclose his intention to assert the superiority of Security's lien.

---

superior lien rights on behalf of Security. He merely alleges that had he been aware of the existence of the facts not disclosed by Judkins, he would not have permitted the filing of the notice of Security's lien with his name and bar number on it and would have somehow seen to it that the notice of lien and loan documents prepared by Judkins acknowledged the superiority of his right to attorney fees over Security's lien. (LiMandri does not indicate how he could have exerted any control over the preparation of the loan documents or prevented Judkins's filing the notice of lien.) Essentially, he alleges he would have challenged Security's lien earlier had he known of it earlier. LiMandri's delay in challenging Security's lien does not qualify as a change of position to his injury or risk within the meaning of section 1709.

## II

### *Intentional Interference With Prospective Economic Advantage and Contractual Relations*

■ As we noted in *Saunders* v. *Cariss* (1990) 224 Cal.App.3d 905 [274 Cal.Rptr. 186], "[i]t has long been established that in ruling on a demurrer, the trial court is obligated to look past the form of a pleading to its substance. Erroneous or confusing labels attached by the inept pleader are to be ignored if the complaint pleads facts which would entitle the plaintiff to relief. [Citation.] 'It is not what a paper is named, but what it is that fixes its character.' [Citation.]" (*Id.* at p. 908.)

As we explain below, LiMandri's complaint fails to state a cause of action for intentional interference with prospective economic advantage, as LiMandri entitles his third cause of action. However, the complaint does state facts sufficient to constitute a cause of action for the distinct tort of intentional interference with contractual relations.

### A. *Interference With Prospective Economic Advantage*

■ "The elements of intentional interference with prospective economic advantage have been stated as follows: '(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.' [Citations.]" (*Westside Center Associates* v. *Safeway Stores 23, Inc.* (1996) 42 Cal.App.4th 507, 521-522 [49 Cal.Rptr.2d 793].)

■ LiMandri tends to blur the distinction between intentional interference with prospective economic advantage and intentional interference with contract or contractual relations, as did earlier cases dealing with the so-called "interference torts." In 1961 an appellate court referred to the two theories as a single tort, stating: "The tort of interference with an advantageous relationship, or with a contract, does not . . . disintegrate because it relates to a contract not written or an advantageous relation not articulated into a contract." (*Zimmerman* v. *Bank of America* (1961) 191 Cal.App.2d 55, 57 [12 Cal.Rptr. 319].) The California Supreme Court later noted: "The great weight of authority is that the tort of interference with contract is merely a species of the broader tort of interference with prospective economic advantage." (*Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815, 823 [122 Cal.Rptr. 745,

537 P.2d 865], disapproved on another ground by *Della Penna* v. *Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376, 393, fn. 5 [45 Cal.Rptr.2d 436, 902 P.2d 740] (*Della Penna*).)

However, in *Della Penna* the California Supreme Court addressed "the need to draw and enforce a sharpened distinction between claims for tortious disruption of an *existing* contract and claims that a *prospective* contractual or economic relationship has been interfered with by the defendant." (*Della Penna, supra,* 11 Cal.4th at p. 392.) Emphasizing that the two torts are analytically distinct, *Della Penna* stated: "The courts provide a damage remedy against third party conduct intended to disrupt an existing contract precisely because the exchange of promises resulting in such a formally cemented economic relationship is deemed worthy of protection from interference by a stranger to the agreement. Economic relationships short of contractual, however, should stand on a different legal footing as far as the potential for tort liability is reckoned. . . .

"A doctrine that blurs the analytical line between interference with an existing business contract and interference with commercial relations *less* than contractual is one that invites both uncertainty in conduct and unpredictability of its legal effect. The notion that inducing the breach of an existing contract is simply a subevent of the 'more inclusive' class of acts that interfere with economic relations, while perhaps theoretically unobjectionable, has been mischievous as a practical matter. Our courts should, in short, firmly distinguish the two kinds of business contexts, bringing a greater solicitude to those relationships that have ripened into agreements, while recognizing that relationships short of that subsist in a zone where the rewards and risks of competition are dominant." (*Della Penna, supra,* 11 Cal.4th at p. 392.)

Accordingly, *Della Penna* held that ". . . a plaintiff seeking to recover for an alleged interference with prospective contractual or economic relations must plead and prove as part of its case-in-chief that the defendant not only knowingly interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful *by some legal measure other than the fact of interference itself.*" (*Della Penna, supra,* 11 Cal.4th at p. 393, italics added.) *Della Penna* further held the change in rules for pleading and proving intentional interference with prospective economic advantage applied retroactively. (*Id.* at pp. 391-392, fn. 4.)

*Della Penna* did not specify what sort of conduct would qualify as "wrongful" apart from the interference itself. Justice Mosk's concurring opinion in *Della Penna* suggested the wrongfulness requirement would be

satisfied by conduct that is independently tortious or a restraint of trade. (*Della Penna, supra,* 11 Cal.4th at pp. 408-409.) The Oregon Supreme Court suggested the requirement of wrongful conduct would be satisfied by conduct that violates a statute, regulation or recognized rule of common law. (*Top Serv. Body Shop, Inc.* v. *Allstate Ins. Co.* (1978) 283 Or. 201 [582 P.2d 1365, 1371], cited in *Arntz Contracting Co.* v. *St. Paul Fire & Marine Ins. Co.* (1996) 47 Cal.App.4th 464, 477 [54 Cal.Rptr.2d 888].) In *Willard* v. *Caterpillar, Inc.* (1995) 40 Cal.App.4th 892 [48 Cal.Rptr.2d 607], the court tested the defendant's alleged intentional spoliation of evidence, an offshoot of intentional interference with prospective economic advantage, for "wrongfulness" under *Della Penna* in light of the suggestion in the Restatement Second of Torts that "conduct which is 'illegal or unfair or immoral according to the common understanding of society' may subject one to tort liability. [Citation.]" (*Id.* at p. 920.)

LiMandri has not stated a cause of action for intentional interference with prospective economic advantage under any of these tests. LiMandri alleges Judkins drafted a security agreement, financing statement and notice of lien in an "attempt to grant [Security] a security interest in the judgment or settlement proceeds of the tort claims involved in the state action," attempted to impose superior lien rights to the Deddehs' share of the settlement proceeds or judgment, filed the notice of lien bearing LiMandri's name and state bar number and contested the superiority of LiMandri's contractual lien rights, which resulted in the federal interpleader litigation. The gravamen of LiMandri's interference cause of action is that Judkins, with knowledge of LiMandri's superior contractual lien rights in the Deddehs' settlement proceeds, created a security interest in those proceeds on behalf of Security and asserted it as superior to LiMandri's contractual lien. Judkins's alleged conduct was not "wrongful" apart from constituting intentional interference with LiMandri's contractual relationship with the Deddehs.

In supplemental briefing, LiMandri contends his complaint shows Judkins's conduct was independently wrongful in that it charges him with fraudulent misrepresentations and breach of fiduciary duty. This contention is without merit. LiMandri's complaint actually alleges fraud by nondisclosure rather than fraud by misrepresentation. As we discussed above, LiMandri has not adequately pleaded a cause of action for fraud by nondisclosure, and Judkins owed no fiduciary duty to LiMandri. (See fn. 3, *ante.*)

LiMandri also argues the complaint shows Judkins engaged in wrongful conduct apart from interference when he filed the notice of lien bearing LiMandri's name and bar number in the underlying state court action, thereby committing the independent tort of "misappropriation of name" and

violating established business customs, standards or ethics.[6] We do not believe Judkins's alleged misappropriation of LiMandri's name qualifies as "independently wrongful" conduct under *Della Penna* because while it may have been independently tortious, it was not the act that constituted the interference with LiMandri's prospective advantage.

■ The *Della Penna* majority stated ". . . a plaintiff seeking to recover for alleged interference with prospective economic relations has the burden of pleading and proving that the defendant's *interference* was wrongful 'by some other measure beyond the fact of the interference itself.' [Citation.]" (*Della Penna, supra,* 11 Cal.4th at pp. 392-393, italics added, fn. omitted.) Thus, the plaintiff must allege the conduct constituting the interference was itself wrongful by some other measure beyond the fact it amounted to interference. It is insufficient to allege the defendant engaged in tortious conduct distinct from or only tangentially related to the conduct constituting the actual interference.

■ Judkins's filing of the notice of lien was collateral to his alleged interference with LiMandri's prospective advantage. The act of filing Security's notice of lien did not create the competing lien which interfered with LiMandri's economic advantage or contractual relations; it merely gave notice that Security was asserting the lien. Since Judkins's filing of the notice of lien bearing LiMandri's misappropriated name did not constitute the essential interference with LiMandri's prospective economic advantage, it does not satisfy *Della Penna*'s requirement that to be actionable, the *interference* must be wrongful by some legal measure other than the fact of interference itself.

■ Finally, we address LiMandri's suggestion that Judkins's conduct was independently wrongful because it consisted of violations of California Uniform Commercial Code (UCC) section 9104, subdivisions (h) and (k), and Business and Professions Code section 6128.

UCC section 9104, subdivision (h), provides that division 9 of the UCC, governing transactions creating security interests in personal property or fixtures (UCC, § 9201), does not apply "[t]o a right represented by a judgment." (UCC, § 9104, subd. (h).) UCC section 9104, subdivision (k), provides that division 9 does not apply "[t]o a transfer in whole or part of any claim arising out of tort." The California code comment to UCC section 9104 states: "Paragraph (k) as it applies to a tort claim continues the rule under prior law which held that a tort claim before final judgment is not assignable." (23C West's Ann. Cal. U. Com. Code, § 9104 (1990 ed.) p. 330,

---

[6] *A copy of Security's notice of lien is attached as an exhibit to LiMandri's complaint.*

citing *Pacific Gas & Electric Co.* v. *Nakano* (1939) 12 Cal.2d 711 [87 P.2d 700, 121 A.L.R. 417].)

Transactions creating security interests in tort claims are not unlawful per se, as UCC section 9104 is not a prohibitory statute that can be "violated," as LiMandri accuses Judkins of doing. The effect of UCC section 9104, subdivisions (h) and (k), is merely that a security interest in a tort claim or right represented by a judgment cannot be perfected and, accordingly, the secured party is not entitled to the benefits accorded to perfected security interests under division 9 of the UCC. (*Bluxome Street Associates* v. *Fireman's Fund Ins. Co.* (1988) 206 Cal.App.3d 1149, 1155-1156 [254 Cal.Rptr. 198].) Thus, the operation of UCC section 9104 did not render Judkins's creation of a security interest in the Deddehs' share of settlement or judgment proceeds in the Signal Landmark litigation "wrongful" apart from its interference with his prospective economic advantage.

Business and Professions Code section 6128 provides, in pertinent part, that an attorney is guilty of a misdemeanor if he or she, "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party." (Bus. & Prof. Code, § 6128, subd. (a).) Since LiMandri's complaint fails to state a cause of action for fraud against Judkins, it likewise fails to show Judkins violated Business and Professions Code section 6128. LiMandri's allegations of fraud do not satisfy the element of wrongfulness apart from the interference itself.

LiMandri has not pleaded nor shown he can plead that Judkins's interference with his prospective economic advantage was wrongful by some measure beyond the fact of the interference itself. Consequently, his complaint fails to state a cause of action for intentional interference with prospective economic advantage.

## B. *Intentional Interference With Contractual Relations*

We interpret *Della Penna*'s directive that courts give greater solicitude to existing contractual relationships to mean that the requirement of wrongfulness apart from the interference itself does not apply to a cause of action for intentional interference with *existing* contractual relations; it applies only to a cause of action for intentional interference with prospective economic advantage. ■ Thus, "[t]he elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to

induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. [Citations.]" (*Pacific Gas & Electric Co.* v. *Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126 [270 Cal.Rptr. 1, 791 P.2d 587].) The plaintiff need not allege an actual breach, but only interference with or disruption of his or her contractual relations. (*Id.* at p. 1129.) The California Supreme Court specifically held that an action for intentional interference with contractual relations lies for intentional interference with an attorney's contingency fee contract. (*Herron* v. *State Farm Mutual Ins. Co.* (1961) 56 Cal.2d 202, 205 [14 Cal.Rptr. 294, 363 P.2d 310]; see also *Skelly* v. *Richman* (1970) 10 Cal.App.3d 844 [89 Cal.Rptr. 556]; *Weiss* v. *Marcus* (1975) 51 Cal.App.3d 590, 600-601 [124 Cal.Rptr. 297].)

 LiMandri's complaint states facts sufficient to constitute a cause of action for intentional interference with an existing contractual relationship. LiMandri alleges a valid contract between him and the Deddehs and Judkins's knowledge of the contract. The complaint alleges intentional acts by Judkins designed to disrupt the contractual relations between LiMandri and the Deddehs as well as actual disruption, as Judkins allegedly pursued Security's claim of superior lien rights to the Deddehs' portion of the Signal Landmark settlement with full knowledge of LiMandri's prior lien rights. Judkins's conduct disrupted the Deddehs' performance of their contract with LiMandri by causing payment of their share of LiMandri's attorney fees to be withheld until LiMandri successfully litigated the interpleader action necessitated by Judkins's conduct. Further, the Deddehs' signing the security agreement prepared by Judkins arguably amounted to an induced breach of their fee contract with LiMandri. Finally, LiMandri alleges damages in the form of attorney fees still withheld in addition to fees and costs he incurred in connection with the interpleader action. LiMandri has sufficiently pleaded all the elements of a cause of action for intentional interference with contractual relations.

III

*LiMandri's Cause of Action for Intentional Interference With Contractual Relations Is Not Barred by the Litigation Privilege*

 The court ruled the notice of lien Judkins filed on behalf of Security "was filed, with plaintiff's actual or constructive knowledge, in a judicial proceeding, by a party permitted to file such a claim, with the object of creating an assessment on the judgment in that action, and is thus

privileged under Civil Code 47(b)." To the extent this ruling means LiMandri's cause of action for intentional interference with contractual relations is barred by the "litigation privilege" codified in section 47, it is incorrect.

 Section 47, subdivision (b), provides in relevant part: "A privileged publication or broadcast is one made . . . [i]n any . . . judicial proceeding." "[T]he privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. [Citations.]" (*Silberg* v. *Anderson* (1990) 50 Cal.3d 205, 212 [266 Cal.Rptr. 638, 786 P.2d 365].)

The threshold issue in determining whether the litigation privilege applies is whether the defendant's conduct was communicative or noncommunicative. (*Kimmel* v. *Goland* (1990) 51 Cal.3d 202, 211 [271 Cal.Rptr. 191, 793 P.2d 524]; *Mero* v. *Sadoff* (1995) 31 Cal.App.4th 1466, 1480 [37 Cal.Rptr.2d 769].) As we pointed out in *Kupiec* v. *American Internat. Adjustment Co.* (1991) 235 Cal.App.3d 1326 [1 Cal.Rptr.2d 371], "section 47, subdivision (b)(2), applies only to communicative acts and does not privilege tortious courses of conduct. [Citations.]" (*Id.* at p. 1331.)

 Section 47, subdivision (b)(2), does not bar LiMandri's cause of action for intentional interference with contractual relations because it is based upon an alleged tortious course of conduct, including Judkins's preparing and having the Deddehs execute documents creating Security's security interest in the Deddehs' gross share of the Signal Landmark settlement proceeds and his refusal to concede the superiority of LiMandri's contractual lien. While the isolated act of filing Security's notice of lien was communicative, it was only one act in the overall course of conduct alleged in LiMandri's third cause of action. In any event, as we discussed above, the filing of Security's notice of lien did not create the competing lien which interfered with LiMandri's contractual relations; it merely gave notice that Security was asserting the lien.

Even assuming LiMandri's cause of action for intentional interference with contractual relations is based upon communicative conduct, it is not barred by the litigation privilege because the other requirements for application of the privilege are not satisfied. Although Security's notice of lien was filed in a judicial proceeding, neither Security nor Judkins was a litigant or other participant in the Signal Landmark litigation. A stranger to a civil action does not become a "litigant or other participant" in the action merely by filing a notice of lien against any judgment or settlement proceeds the plaintiff might realize in the action.

Even if we were to stretch the meaning of "litigant or other participant" to qualify Judkins as such in the Signal Landmark litigation, the litigation privilege still would not apply because none of his alleged conduct was connected or logically related to that litigation or engaged in for the purpose of achieving its objects. ■ *Silberg* noted: "The requirement that the communication be in furtherance of the objects of the litigation is, in essence, simply part of the requirement that the communication be connected with, or have some logical relation to, the action, i.e., that it not be extraneous to the action." (*Silberg* v. *Anderson, supra,* 50 Cal.3d at pp. 219-220.) "[T]he communication must have an objective relationship to the litigation. [¶] 'A document is not privileged merely because it has been filed with a court or in an action. The privileged status of a particular statement [or communicative act] therein depends on its relationship to an actual or potential issue in an underlying action.' [Citation.]" (*Shahvar* v. *Superior Court* (1994) 25 Cal.App.4th 653, 657 [30 Cal.Rptr.2d 597].)

■ Nothing in LiMandri's complaint suggests the Security-Deddeh loan transaction or Security's claim of superior lien rights in the Signal Landmark settlement proceeds had any connection or objective relationship to the issues or subject matter of the Signal Landmark litigation, which involved liability for environmental contamination. Although the filing of Security's notice of lien was a communicative act, it was not privileged because the subject matter of the notice was unrelated to the issues in the Signal Landmark litigation. On its face, Security's notice of lien was not filed for the purpose of achieving the objects of any party to that litigation, but solely for the purpose of notifying Signal Landmark that Security claimed a security interest in any judgment or settlement proceeds otherwise payable to the Deddehs.

In support of its application of the litigation privilege to the filing of Security's notice of lien, the court cited *Wilton* v. *Mountain Wood Homeowners Assn.* (1993) 18 Cal.App.4th 565 [22 Cal.Rptr.2d 471]. In *Wilton* the issue was whether the publication of an assessment lien by a homeowners association was absolutely privileged under section 47, subdivision (b). Noting the filing of a mechanic's lien has been held to be similarly privileged, *Wilton* stated: "Like mechanics' liens, homeowners' assessment liens are permitted by law to achieve the object of litigation. Both types of liens must be filed as a first step in foreclosure actions to remedy defaults, and thus are closely related to judicial proceedings. We therefore conclude that the publication of homeowners' assessment liens is absolutely privileged under . . . section 47, subdivision (b)." (*Id.* at p. 569.)

The court's reliance on *Wilton* was misplaced, as there are major distinctions between the homeowners' assessment lien at issue in that case and

Security's notice of lien filed in the instant case. It was not necessary for Security to file its notice of lien to create or perfect its contractual lien rights; the notice of lien was filed solely for the purpose of giving notice of those claimed rights. A statutory homeowners' assessment lien or mechanics' lien, on the other hand, must be filed to come into being as a tangible, enforceable lien. (See *Koudmani* v. *Ogle Enterprises, Inc.* (1996) 47 Cal.App.4th 1650, 1656 [55 Cal.Rptr.2d 330].) More importantly, the filing of a mechanics' lien or homeowners' assessment lien is a statutory prerequisite to the pursuit of a judicial remedy for default. (See §§ 1367, 3144.) The filing of such a lien is privileged under section 47 because it relates directly to the judicial action which can be instituted to foreclose the lien. Security's notice of lien, on the other hand, was not a statutory prerequisite to enforcement of that lien or the interpleader action it engendered.

*Wilton* distinguished a homeowners' assessment lien from a deed of trust, which can support an action for disparagement of title if false. *Wilton* noted: "Deeds of trust are filed with the owner's consent and, at least initially, their purpose is to facilitate credit rather than to collect debts. Although deeds of trust may be foreclosed judicially after a default, they are not at their inception related to judicial proceedings. In contrast to deeds of trust, assessment liens are imposed unilaterally, only after a default and only to initiate the foreclosure process." (*Wilton* v. *Mountain Wood Homeowners Assn., supra,* 18 Cal.App.4th at p. 570.) Like a deed of trust, the purpose of Security's lien was to facilitate credit. It was not imposed unilaterally after a default or for the purpose of initiating any judicial process. *Wilton* is not authority for the application of the litigation privilege of section 47 to Judkins's filing of Security's notice of lien.

■ Judkins contends his conduct in securing Security's lien rights is privileged under section 47 because it related to the subsequent interpleader action. Judkins relies on *Rubin* v. *Green* (1993) 4 Cal.4th 1187 [17 Cal.Rptr.2d 828, 847 P.2d 1044], in which the California Supreme Court reaffirmed the principle that "communications with 'some relation' to an *anticipated* lawsuit are . . . within the [litigation] privilege." (*Id.* at p. 1194.) *Rubin* concluded the litigation privilege protected defendant attorneys from liability for interference with a mobilehome park owner's contractual relations with park residents based on the attorneys' alleged solicitation of the residents as clients in anticipated litigation against the owner. (*Id.* at p. 1193.)

*Rubin* is distinguishable from the instant case. The attorney defendants in *Rubin* were charged with communications to prospective plaintiffs in a contemplated lawsuit. As such, the communications were directly related to

anticipated litigation and therefore absolutely privileged under section 47. In contrast, Judkins is charged with a course of largely noncommunicative conduct unrelated to any anticipated litigation. That Judkins's actions resulted in an interpleader action does not mean they were undertaken in anticipation of such litigation. For the litigation privilege to apply to prelitigation communicative conduct, the conduct must have " 'some relation to a proceeding that is actually contemplated in good faith and under serious consideration by . . . a possible party to the proceeding[.]' " (*Rubin* v. *Green, supra,* 4 Cal.4th at pp. 1194-1195, quoting *Rosenthal* v. *Irell & Manella* (1982) 135 Cal.App.3d 121, 126 [185 Cal.Rptr. 92].) The allegations of LiMandri's complaint do not establish that the interpleader action was a proceeding contemplated in good faith or under serious consideration by Judkins when he interfered with LiMandri's contractual relations. In short, the interpleader litigation was *necessitated* rather than *anticipated* by Judkins's alleged interference with LiMandri's contractual relations.

Judkins's alleged course of conduct forming the basis for LiMandri's cause of action for intentional interference with contractual relations is not privileged under section 47, subdivision (b)(2), because it was essentially noncommunicative and was neither related to the pending Signal Landmark litigation nor in anticipation of the subsequent interpleader action.

## IV

### *Negligent Interference With Prospective Economic Advantage or Contractual Relations*

■ "The tort of *negligent* interference with economic relationship arises only when the defendant owes the plaintiff a duty of care." (*Stolz* v. *Wong Communications Limited Partnership* (1994) 25 Cal.App.4th 1811, 1825 [31 Cal.Rptr.2d 229].) The allegations of LiMandri's complaint do not establish Judkins owed LiMandri a duty of care that would support a *negligent* interference cause of action. While he owed LiMandri a general duty to refrain from committing *intentionally* tortious conduct, the duty of undivided loyalty Judkins owed to his client, Security, precludes the imposition of a "negligence" duty of care owed to LiMandri in connection with Judkins's representation of Security in the Deddeh loan transaction.

■ Moreover, a plaintiff who is not a party to a contract between a defendant and a third party generally may not recover for loss of expected

economic advantage resulting from the defendant's negligent performance of the contract unless there is a special relationship between the parties. (*J'Aire Corp.* v. *Gregory* (1979) 24 Cal.3d 799, 804 [157 Cal.Rptr. 407, 598 P.2d 60] (*J'Aire*).) The key component in determining whether the relationship between plaintiff and defendant in such cases gives rise to a duty of care is the foreseeability of the harm suffered by the plaintiff. (*Id.* at p. 806.) Foreseeability is generally measured by the closeness of the connection or nexus between the defendant's conduct and risk of injury to the plaintiff—that is, whether the defendant had "entered into any relationship or undertaken any activity where negligence on his part was reasonably likely to affect plaintiff adversely." (*Id.* at p. 807.)

Here, Judkins's conduct involved his representation of a client in a loan transaction. It is not reasonably foreseeable that an attorney's conduct in carrying out such representation will adversely affect a stranger to the loan transaction. Thus, to the extent Judkins's conduct was allegedly *negligent*, as opposed to intentional, the nexus between the conduct and the risk of injury to LiMandri was too tenuous to support the imposition of a duty of care owing from Judkins to LiMandri. The court properly sustained Judkins's general demurrer as to LiMandri's fourth cause of action for negligent interference with prospective economic advantage because LiMandri's complaint fails to allege a duty of care owed by Judkins to LiMandri.

For the same reason, the complaint also fails to state a cause of action for negligent interference with *contractual relations* (as opposed to prospective economic advantage). In *Fifeld Manor* v. *Finston* (1960) 54 Cal.2d 632 [7 Cal.Rptr. 377, 354 P.2d 1073, 78 A.L.R.2d 813], the California Supreme Court noted: "[W]ith the exception of an action by the master for tortious injuries to his servant, thus depriving the master of his servant's services, which traces back to medieval English law [citations], the courts have consistently refused to recognize a cause of action based on negligent, as opposed to intentional, conduct which interferes with the performance of a contract between third parties or renders its performance more expensive or burdensome. [Citations.]" (*Id.* at p. 636.) Although the continuing validity of the so-called "*Fifel* rule" is questionable in light of the California Supreme Court's recognition in *J'Aire, supra,* 24 Cal.3d 799 of a cause of action for negligent interference with prospective economic advantage, the Supreme Court has yet to disapprove *Fifel.* In any event, LiMandri's inability to plead a duty of care on the part of Judkins precludes his maintenance of a cause of action on any negligence theory.

V

*Motion for Reconsideration*

As part of his motion for reconsideration, LiMandri requested leave to amend his complaint to plead a cause of action for misappropriation of identity. LiMandri contends the court erred in denying him leave to amend.[7]

The court denied LiMandri's motion for reconsideration on the ground it was not based on "any new facts, circumstances or law." In doing so, the court did not address LiMandri's request for leave to amend made in connection with the motion for reconsideration. We believe the propriety of allowing LiMandri to amend his complaint to add a cause of action for misappropriation of identity is properly decided by the trial court in the exercise of its discretion under Code of Civil Procedure sections 473 and 576, should LiMandri choose to pursue the matter by way of a motion for leave to amend his complaint. Accordingly, we decline to address that issue on this appeal.

Disposition

The judgment of dismissal is reversed as to the third cause of action of the complaint. The trial court is directed to overrule the general demurrer to the third cause of action. The judgment is affirmed as to the first, second and fourth causes of action. The parties shall bear their own costs on appeal.

Huffman, J., and Haller, J., concurred.

Respondent's petition for review by the Supreme Court was denied April 16, 1997.

---

[7]To the extent LiMandri's appeal seeks review of the court's order denying his motion for reconsideration, it is moot in light of our reversal of the order sustaining Judkins's demurrer and reinstatement of the complaint.