Filed 3/10/15  York v. Strong CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| MICHAEL G. YORK, | |
| Plaintiff and Appellant, | G049512 |
| v. | (Super. Ct. No. 30-2013-00660117) |
| KATHLEEN STRONG, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Geoffrey T. Glass, Judge.  Affirmed with directions.

Michael G. York, in pro. per., for Plaintiff and Appellant.

Law Offices of David J. Harter, David J. Harter; and Kurt Ressler, for Defendant and Respondent.

\*      \*      \*

Michael G. York appeals from a judgment requiring him to pay $21,840 in attorney fees to Kathleen Strong, following her successful motion to strike his complaint as a Strategic Lawsuit Against Public Participation, or SLAPP action. (Code Civ. Proc., § 425.16.) York argues the trial court abused its discretion by awarding Strong 100 percent of the hours her attorney claimed to have worked, at the $400 per hour rate he sought, because: (1) the attorney spent an unreasonable amount of time on the anti-SLAPP motion; (2) his billing records demonstrate he billed time for tasks that should have been handled by a secretary or paralegal at a significantly reduced hourly rate; and (3) he claimed 100 percent of his time for appearing in court at the hearing, even though other records demonstrated he was also appearing in the same courtroom on another matter during the same court session.

We find no abuse of the court's broad discretion in assessing the proper amount of the fee award and consequently affirm its order.

FACTS

York filed suit against Strong in July of 2013, alleging causes of action for intentional interference with contract and conversion, arising out of the parties' competing claims to share in a settlement paid to Amer Jnied, a client whom both York and Strong had represented in earlier litigation.

According to York's complaint, both York and Strong had filed liens against a trust account in which Jnied's settlement funds were held. Strong and Jnied subsequently entered into an agreement whereby Strong would be paid $325,000 from the trust account, and limit her lien to that amount. York and Jneid also entered into a separate agreement whereby York would be paid $200,000 from the trust account, and limit his lien to that amount. However, despite the fact the trust account contained sufficient funds to make both payments, and that Jnied himself had consented to York's

2

payment, Strong objected to it, and "due to [] Strong's litigious nature, [] Jnied will not authorize the payment to [] York of the $200,000 due him over [] Strong's objection." York alleged that Strong's refusal to consent to his settlement was retaliatory and in bad faith, borne of her resentment of York's successful representation of a third attorney, Bill Suojanen, in related litigation against her.

Strong responded to the complaint with a motion to strike under the anti-SLAPP law. She argued that York's complaint arose from her constitutionally protected act of "refus[ing] consent to a conditional settlement of a lawsuit involving York in order to protect the priority of her lien."

Strong explained that both her settlement with Jnied and York's settlement with Jnied had been conditioned on there being no objections from other claimants to the settlement fund, and she acknowledged that Suojanen, York's client, who was also a lien claimant to the fund, had objected to the disbursement of funds to her. Thus, her sole requirement for consenting to the York settlement had been that any disbursement of funds to York must follow the disbursement funds to her, so as to preserve the priority of her lien until the funds owed to her were actually distributed.

York refused to accord Strong that priority, and stated he would sue her instead. Strong further claimed that York's complaint had no probability of success on the merits because, among other things, her act of refusing consent was privileged litigation conduct. Strong's motion was 17 pages in length and cited over 40 cases. It was accompanied by Strong's three-page declaration and over 120 pages of exhibits.

York opposed the motion, relying largely on *LiMandri v. Judkins* (1997) 52 Cal.App.4th 326 (*LiMandry*) – a case not cited by Strong in her motion – for the proposition that the acts of filing and giving notice of a lien were not privileged as against a claim of intentional interference with contract. He chided Strong for not including *LiMandry* among the numerous cases cited in her motion, suggesting that in light of the "extensive amount of research [] conducted in connection with [her m]otion," the

3

omission was intentional "because the case shows that [] Strong's conduct is not privileged."

York argued that *LiMandri* cited four distinct reasons why the lien claim in that case was not protected by the litigation privilege, and that Strong's acts to protect her own lien were likewise not privileged for each of the same four reasons. He also contended that in order to demonstrate her conduct was protected by the litigation privilege, Strong must satisfy each of five required elements: (1) her challenged act was communicative in nature; (2) it was made in a legal proceeding; (3) the legal proceeding, if any, involved York; (4) the act of filing and giving notice of the lien was itself the act that interfered with the contract; and (5) that the conduct was engaged in for the purpose of achieving the proper objects of the litigation. York contended that Strong's conduct met none of these mandatory requirements.

York's eight-page opposition was supported by a declaration and 50 pages of exhibits.

In her reply, Strong pointed out that York made no argument that the anti-SLAPP law was inapplicable to this case, and had instead focused solely on making what she contended was an unmeritorious claim that her efforts in support of her lien were not covered by the litigation privilege. She also asserted that even if her conduct was not privileged, York had failed to proffer sufficient evidence to demonstrate a probability he would prevail on the merits of his case. She also argued the *LiMandri* case was distinguishable on four separate grounds. The reply was supported by two declarations and 72 pages of exhibits.

The trial court granted the motion.

Strong then moved for an order setting the amount of mandatory attorney fees to be awarded her as prevailing party. She supported her motion with a declaration from her attorney, who explained he had taken the case on a contingency basis. He detailed his impressive credentials, and informed the court that his regular,

4

noncontingent, hourly rate was between $375 and $450 per hour, depending upon the complexity of the case and type of litigation. He requested that his basic hourly rate for this case – the lodestar amount – be set at $400 per hour. He stated he had spent a total of 47.6 hours on the anti-SLAPP motion and preparing the attorney fee motion, and that he anticipated spending an additional 4 hours reviewing the opposition and preparing a reply brief, plus an additional 3 hours preparing for and appearing at the hearing. He attached billing records as additional support for the number of hours claimed.

Strong's counsel explained that the amount of time spent was reasonable, because anti-SLAPP motions are generally complex, and because this motion in particular required a great deal of research to counter York's expected and actual arguments. Finally, counsel argued that the basic fee established by multiplying the hours worked by the $400 hourly rate ($21,840) should also be enhanced by a factor of 1.5 – both because he had taken the case on a contingent basis and because he anticipated York (whom he described as being experienced at collections work) would make collection of any award especially difficult.

York filed an opposition in which he primarily argued that the amount of time Strong's counsel spent on the anti-SLAPP motion, as reflected in the timesheets submitted in support of Strong's motion, was excessive. Specifically, he asserted that because Strong's counsel claimed to have previously litigated numerous anti-SLAPP motions, extensive research should not have been required. He inferred from the fact Strong's counsel cited 50 authorities in the anti-SLAPP motion that counsel must have read at least 70-90 authorities in the course of research – a number York considered excessive.

York also chided Strong's counsel for including time spent preparing tables of authorities, bookmarking exhibits, and e-filing and serving the motion as part of his billing, all of which York considered more appropriate work for a legal assistant. York asserted that the time Strong's counsel spent preparing additional evidence in support of

5

his reply brief should likewise not be compensated, because any reasonably experienced attorney should know that courts would not consider new evidence submitted in support of a reply.

Finally, York contended that Strong's counsel should not be compensated for all the time he had claimed for attending the hearing on the anti-SLAPP motion, because the court's records reflected he was also appearing on another matter in the same courtroom. York inferred from this that Strong's counsel had "double-billed" for this time and improperly "failed to disclose the existence of the other appearance."

And with respect to the motion for fees itself, York again claimed that Strong's counsel had spent an exorbitant amount of time preparing it (5.2 hours), explaining that the very expertise that purportedly justified counsel's $400 per hour fee, should have made him able to prepare the motion in less time.

York also argued there was no justification for any fee enhancement, claiming that Strong had sufficient resources to pay her counsel a regular hourly fee.

The court awarded Strong $21,840, which is exactly equal to the number of hours her counsel claimed to have spent, multiplied by the $400 per hour lodestar rate he sought. However, the court's order did not offer any explanation of the rationale it had employed in reaching that figure.

DISCUSSION

1. *Standard of Review and Background law*

When a defendant prevails on an anti-SLAPP motion, she is entitled to an award of attorney fees as a matter of law. (Code Civ. Proc., § 425.16, subd. (c)(1).) Thus, when a motion for fees is brought by such a defendant, the trial court's task is to determine the proper amount of fees to award. We apply an abuse of discretion standard when reviewing such an order. (*City of Colton v. Singletary* (2012) 206 Cal.App.4th 751,

6

784.)  "'Trial judges are entrusted with this discretionary determination because they are in the best position to assess the value of the professional services rendered in their courts.  [Citations.]  Thus, the court's fee award "'will not be disturbed unless the appellate court is convinced that it is clearly wrong.'"'"  (*Ellis v. Toshiba America Information Systems, Inc.* (2013) 218 Cal.App.4th 853, 882.)

In making its assessment, the trial court properly employs the lodestar method of analysis.  (*Ketchum v. Moses* (2001)  24 Cal.4th 1122, 1136.)  "Under this method, a court assesses attorney fees by first determining the time spent and the reasonable hourly compensation of each attorney.  [Citation.]  The court next determines whether that lodestar figure should be adjusted based on various relevant factors."  (*Mann v. Quality Old Time Service, Inc.* (2006) 139 Cal.App.4th 328, 342.)  These factors may include "the contingent nature of the award, the legal skill displayed in presenting the issues, and the extent the litigation precluded other employment.  [Citation.]  '"In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services."'"  (*Bender v. County of Los Angeles* (2013) 217 Cal.App.4th 968, 987.)

Finally, "[a] trial court is not required 'to issue a statement of decision with regard to the fee award,' or to provide detailed reasons for overruling objections to a fee request.  [Citation.]  Furthermore, [if the appellant] did not request a statement of decision with specific findings, "'"[a]ll intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown.'"'  [Citation.]  'No specific findings reflecting the court's calculations [are] required.'"  (*Lockaway Storage v. County of Alameda* (2013) 216 Cal.App.4th 161, 192-193.)

7

*2. The Award in This Case*

On appeal, York argues many of the same points he raised in the trial court, claiming now that the alleged inefficiencies and discrepancies revealed in the timesheets submitted by Strong's counsel demonstrate the trial court abused its discretion in awarding fees based on 100 percent of the hours counsel claimed. However, because we are obligated to indulge all available inferences and presumptions in favor of the court's ruling, and we can reverse only when it is *clear* the trial court abused its broad discretion, York has set himself a difficult task. It is only in very rare cases that we can discern any abuse of the trial court's discretion in assessing the amount of an attorney fee award. This is not that rare case.

York first asserts that the record below indisputably demonstrated Strong's counsel "double-billed" for attending the hearing on the anti-SLAPP motion, since the court's own records indicated he was also appearing in the same courtroom on a different matter on the day of the hearing. We disagree. Conspicuously absent from York's argument is any reference to the circumstances of that other court appearance, or any proof that Strong's counsel was actually paid for it. For all we know, Strong's counsel arranged to schedule a second, *pro bono*, matter for the same court calendar, precisely because he knew he would already be obligated to appear in court on this matter.

York also complains that Strong's counsel's timesheets reveal he billed time for tasks such as preparing tables of authorities, bookmarking exhibits, attaching exhibits to the reply and e-filing and serving the motion and reply brief. In York's view, none of these tasks could be worthy of any significant billable time. However, nothing in this record actually demonstrates that Strong's counsel spent any significant time on such tasks. In each instance cited by York, the timesheets reflect Strong's counsel spent *a block of time on various tasks* associated with the anti-SLAPP motion – some quite substantive, some perhaps less so. For example, counsel's timesheet entry for August 13, 2013, reflects he spent 2.8 hours on the following: "Finalize anti-SLAPP motion; gather

8

all exhibits; obtain signed declaration; preparation of table of authorities and table of contents; bookmark and e-file and serve anti-SLAPP motion." (Some capitalization omitted.) It is impossible to tell from this entry whether Strong's counsel spent any significant portion of the total time listed on the preparation of tables or e-filing of documents; nor could anyone discern whether the time he did spend involved handling these matters from scratch (which, in any event, can sometimes be more efficient than delegating), or was largely devoted to supervision or review of work which actually *had been delegated* to a legal assistant or secretary. An attorney's responsibility would include the supervision of clerical tasks delegated to others. Hence, we discern no abuse of discretion in the trial court's apparent approval of these entries.

York next complains that Strong's counsel spent an inordinate and unreasonable amount of time on the anti-SLAPP and attorney fee motions, suggesting counsel's claimed hours were either exaggerated or quite inefficiently spent. York also asserts that the work which Strong's counsel "performed or claimed to [have] performed was not particularly useful and/or productive." (Some capitalization omitted.) But in making this rather conclusory argument, York asks us to draw inferences which are inconsistent with the court's ruling: e.g., he argues "it is reasonable to infer that [Strong's] counsel reviewed an even greater number of authorities [than cited in his brief]," and that the time expended in doing so "was unnecessarily spent, and/or the work was not particularly useful or productive." Of course, we cannot draw such inferences. It was for the trial court to evaluate whether the work reflected in Strong's motions was sufficient to support the number of attorney hours which her counsel claimed to have expended on it. We cannot second-guess that evaluation.

And even if we had authority to second-guess the trial court's evaluation, we would not be persuaded by York's wholly conclusory assertion that 17 hours is a patently unreasonable amount of time for an experienced attorney to spend preparing an anti-SLAPP motion. However fervently York himself may believe that an attorney as

9

experienced as Strong's counsel should not have needed to engage in extensive research before drafting his motion, that opinion is not in evidence, and even if it were, we would be bound to presume the trial court rejected it – which the trial court was free to do. York's similar challenge to the time spent by Strong's counsel in preparing his reply brief also fails for the same reason.

York also claims the trial court was required to reject compensation for any time Strong's counsel spent "preparing and submitting new matter in support of the reply." According to York, because evidence may be submitted in connection with a reply brief only to "fill gaps in the evidence created by an opposition," (citing *Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1537-1538) whatever time counsel spent on that particular task "was not particularly useful or productive." However, York has not established that the new evidence filed in support of Strong's reply brief actually qualified as prohibited "new matter," rather than as an appropriate response to the arguments raised in York's opposition to the anti-SLAPP motion. We consequently presume the trial court evaluated it somewhat differently than York claims.

Finally, York complains that Strong's counsel expended at least some time in preparing a cost memorandum that included at least one request for a category of costs which was not recoverable – and of course he contends the sliver of time devoted to requesting that one improper item, which even he characterizes as "small," should not have been compensated. The assertion borders on the frivolous. We could not presume that Strong's counsel expended *appreciably more time* preparing a cost memorandum that included one nonrecoverable item, than he would have on preparing a memorandum that did not. In fact, the preparation of a more carefully refined memorandum might actually have required more time. The trial court was certainly not obligated to reduce the fee award on this basis.

10

Because we conclude that none of York's arguments are sufficient to demonstrate the trial court abused its discretion by awarding $21,840 in attorney fees to Strong in connection with her anti-SLAPP motion, we affirm its judgment.

DISPOSITION

The judgment is affirmed and the case is remanded to the trial court with directions to consider a motion for additional attorney fees in connection with this appeal, should Strong choose to file one.  Strong is to recover her costs on appeal.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

MOORE, J.

ARONSON, J.

11