**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

MAY 11 2026

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| NICHOLAS A. VENA, | No. 25-383 |
| Plaintiff - Appellant, | |
| v. | D.C. No. 3:22-cv-00437-W-BLM |
| MOORE, SCHULMAN & MOORE, APC; JULIE WESTERMAN, Esq.; DOES 4-100, inclusive; Esq. DAVID S. SCHULMAN, | MEMORANDUM[*] |
| Defendants - Appellees. | |

Appeal from the United States District Court
for the Southern District of California
Thomas J. Whelan, District Judge, Presiding

Argued and Submitted April 23, 2026
Pasadena, California

Before: HIGGINSON, NGUYEN, and BRESS, Circuit Judges.[**]
Concurrence by Judge Bress.

Nicholas A. Vena appeals the district court's grant of summary judgment for

Moore, Schulman & Moore, APC ("MSM"), Julie Westerman, and David

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Stephen A. Higginson, United States Circuit Judge for the Court of Appeals, Fifth Circuit, sitting by designation.

Schulman (collectively, "Defendants"). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I. Section 1983 Claim

Only a state actor can be liable under 42 U.S.C. § 1983. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999). A plaintiff may demonstrate that a private individual was a state actor under "the joint action test" by "proving the existence of a conspiracy" or by showing that the "private party was a willful participant in joint action with the State or its agents." *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002).

1. The district court correctly concluded that there was no evidence of a conspiracy between Defendants and retired Commissioner Jeannie Lowe to violate Vena's due process rights. Although Defendants did not disclose that they had retained Commissioner Lowe as a mediator in eight other cases, that evidence does not suggest an "agreement" with Commissioner Lowe to ignore the law and evidence in issuing rulings in Vena's ex-wife's favor. *See United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540–41 (9th Cir. 1989) ("To prove a conspiracy between the state and private parties under section 1983, [plaintiff] must show an agreement or meeting of the minds to violate constitutional rights."

(simplified)).[1]

Although Commissioner Lowe notified Vena in her initial disclosures that she had a prior "significant professional relationship" with MSM, would "entertain offers of employment" with them, and would not further disclose those matters, we agree with Vena that Canon 6D(5)(a) of the Code of Judicial Ethics demands more. That Commissioner Lowe should have disclosed the other matters with MSM, however, does not lead to an inference of a conspiracy between her and Defendants. While Vena need not show prejudice to establish the existence of a conspiracy, the fact that he fared worse under subsequent orders issued by another judge who took over from Commissioner Lowe undercuts any claim of a conspiracy. Considering the evidence in the light most favorable to Vena, *see Scott v. Harris*, 550 U.S. 372, 378 (2007), it cannot be reasonably inferred that Commissioner Lowe issued rulings in favor of Vena's ex-wife based on her other mediations with MSM—let alone that Defendants were in agreement with Commissioner Lowe to do so, *see Phelps Dodge*, 865 F.2d at 1540–41.

2.    There is no indication here of "substantial coordination" or

---

[1] Notably, the parties jointly selected Commissioner Lowe after Vena's counsel suggested that there were only four private judges in the area—including Commissioner Lowe—with sufficient experience to handle the mediation. And in four of the eight unrelated cases, opposing counsel, one of whom later represented Vena in the marital dissolution proceeding, suggested retaining Commissioner Lowe. These circumstances further undercut any claim of a conspiracy or joint action.

"significant financial integration" between Defendants and Commissioner Lowe sufficient to establish joint action. *See Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161, 1168 (9th Cir. 2021) ("[S]ubstantial coordination and significant financial integration between the private party and government are hallmarks of a symbiotic relationship" that establishes joint action (simplified)). Although Commissioner Lowe was a mediator for them in other matters, MSM attorneys did not discuss or coordinate which neutrals were engaged in their respective cases, and MSM does "not maintain any database about neutral mediators its lawyers may have retained." Westerman and Schulman did not know that other MSM lawyers had matters before Commissioner Lowe. And in four of MSM's other cases before Commissioner Lowe, opposing counsel proposed her. Without more, these mediations are "mere[] contract[s]" between MSM and Commissioner Lowe, which "does not transform an otherwise private party into a state actor." *See id.* at 1170.

## II.    State Law Claims

Under California law, one of the required elements for negligence and willful misconduct claims is that the defendant owed the plaintiff a duty. *See Cnty. of Santa Clara v. Atl. Richfield Co.*, 137 Cal. App. 4th 292, 318 (2006) (listing elements of negligence); *Simmons v. S. Pac. Transp. Co.*, 62 Cal. App. 3d. 341, 360 (1976) (explaining that willful misconduct is "an aggravated form of

negligence, differing in quality rather than degree from ordinary lack of care").[2]

Here, Vena contends that Defendants owed him a "duty to refrain from extrajudicial actions that would reasonably forseeably cause" him harm. In this context, that would be a duty to disclose to Vena that Defendants retained Commissioner Lowe on other matters or a duty to not retain Commissioner Lowe on other matters. Vena does not cite any relevant cases, rules, or statutes to support either duty.

Under the circumstances here, Defendants did not have a state law duty to disclose or refrain from hiring Commissioner Lowe on other cases. *See LiMandri v. Judkins*, 52 Cal. App. 4th 326, 338 (1997) (holding that an attorney's "duty of undivided loyalty to [the] client superseded any duty on [attorney's] part to disclose information to" another party).

Vena's reliance on the California Court of Appeal's unpublished opinion *Rogozienski v. Allen*, 2007 WL 867773 (Cal. App. Mar. 23, 2007), is misplaced. *Rogozienski* involved one party's attorney gifting a resort time-share to the

---

[2] Vena also contends that the district court erred in granting summary judgment for Defendants on his intentional interference with contractual relations claim because the court erroneously "found no evidence demonstrating an intent to interfere with any contract." But Vena does not specifically and distinctly argue Defendants' intent, so we do not consider Vena's challenge to the district court's ruling on this claim. *See Corbin v. Time Warner Ent.-Advanced/Newhouse P'ship*, 821 F.3d 1069, 1075 n.3 (9th Cir. 2016) ("[W]e will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief." (simplified)).

temporary judge. *Id.* at *1. Because of that gift, it was "foreseeable" that "giving a nondisclosed gift to a judge during a proceeding would ultimately result in the disqualification of the judge and resulting harm to the parties to the proceeding." *Id.* at *7. Thus, the attorney "owed a duty of care under the circumstances not to give a gift to [the temporary judge] when [attorney] was acting as counsel for a party in the dissolution action." *Id.*

Here, Defendants did not give undisclosed gifts to Commissioner Lowe. They retained her as a mediator in other matters. Because of the initial disclosures, Vena was aware that Commissioner Lowe would "entertain offers of employment" with Defendants. Although Commissioner Lowe owed Vena a duty to disclose under Canon 6D(5)(a) of the Code of Judicial Ethics, nothing in California law indicates that Defendants owed Vena a similar duty under these circumstances.

**AFFIRMED.**[3]

---

[3] Vena's motion for judicial notice, Dkt. No. 48, is denied.



*Vena v. Moore, Schulman & Moore, APC*, No. 25-383

BRESS, Circuit Judge, with whom HIGGINSON, Circuit Judge, joins, concurring:

I agree with the court's disposition and join it in full. I write separately to make two observations concerning risk areas for retired judges engaging in "private judging," and the duties of law firms who retain these judges.

First, this case underscores the importance of private judges abiding by the ethical rules that apply to them. *See, e.g.*, Cal. Code Jud. Ethics, Canon 6D. In this case, the parties retained through JAMS a retired judge, Commissioner Lowe, to adjudicate their child-custody dispute. But Commissioner Lowe later recused herself after she did not disclose eight additional matters in which she had been retained by the wife's same law firm during the pendency of the parties' case. Although I do not ascribe any wrongful intent to Commissioner Lowe, the outcome here—an expensive, fifteen-day child-custody trial being vacated due to a judge not adhering to continuing disclosure obligations—is unfortunate for everyone involved and should have been avoided. This case reinforces the importance of private judges and the organizations that employ them maintaining robust procedures for ensuring compliance with disclosure and other ethical obligations.

Second, there may well be cases in which a lawyer knows or should know of a private judge's ethical obligations and has a corresponding state-law duty either to disclose a potential breach of the judge's obligations to the opposing side, or else to

1

refrain from taking actions that foreseeably invite the judge's non-compliance with her ethical duties. The facts of this case do not rise to this level. But with the proliferation of litigants retaining retired judges to resolve their disputes, the subject of potential state-law duties on the part of lawyers is worthy of further consideration by state courts and governing bodies.