**SILICON KNIGHTS, INC., Plaintiff,**

**v.**

**CRYSTAL DYNAMICS, INC., et al., Defendants.**

**No. 97–20586 EAI.**

United States District Court,
N.D. California,
San Jose Division.

Oct. 23, 1997.

J. Mark Holland, Christopher T. Holland, J. Mark Holland & Associates, Newport Beach, CA, for Plaintiff.

David Henry Dolkas, Jeannine Y. Sano, Gray Cary Ware & Freidenrich, Palo Alto, CA, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART INDIVIDUAL DEFENDANTS' MOTION TO DISMISS

INFANTE, United States Magistrate Judge.

### I. *INTRODUCTION*

Individual Defendants J.E. Ardell, Rob Dyer, Jon Horsley, Jon Miller, and Daniel A. Dorison ("Defendants") move to dismiss Plaintiff Silicon Knights, Inc.'s complaint for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6), F.R.Civ. P. For the reasons set forth below, Defendants' motion is GRANTED in part and DENIED in part.

### II. *BACKGROUND*

Plaintiff Silicon Knights, a Canadian corporation, creates, designs, and develops interactive entertainment products, including video game software and related materials. Complaint ¶ 19, 20. Defendant Crystal Dynamics, a California Corporation, is engaged in the business of publishing, distributing, and developing interactive entertainment products, including video game software and related materials. ¶ 15. The individual defendants are present and former employees and officers of Crystal Dynamics: Ardell is the CEO of Crystal Dynamics; Dyer is the President of Crystal Dynamics; Horsely is the Executive Producer and Vice President of Crystal Dynamics; Dorosin is the former Senior Vice President of Business Affairs

and General Counsel of Crystal Dynamics; and Miller is the Executive Producer and Vice President of Crystal Dynamics. ¶ 3–7. The complaint alleges on information and belief that "in committing the fraudulent and otherwise wrongful actions alleged herein, Crystal Dynamics acted by and though the other individual Defendants named herein." ¶ 2.

The complaint alleges that Silicon Knights conceived, created, and developed an innovative new interactive video game entitled "Blood Omen: Legacy of Kain" ("Kain"). ¶ 13. Because Silicon Knights was not well funded and needed financial assistance to complete Kain, Plaintiff entered into negotiations with Crystal Dynamics in late 1993 to fund the development of Kain in exchange for publication rights to the game. ¶ 28. On or about January 3, 1994, the two companies signed a Letter of Intent pertaining to Kain, and signed a "Development Agreement" on February 16, 1994. *Id.* Under "financial duress" of which Crystal Dynamics was aware, Silicon Knights agreed to assign all of Silicon Knights' intellectual property rights in Kain, including the rights to any derivative works, to Crystal Dynamics. In return, Crystal Dynamics made two critical promises to Silicon Knights: (1) the potential of substantial later royalties from Silicon Knights' development of Kain derivative works, including Silicon Knights' right to make the first bid on any derivative works, and (2) publication credits identifying Silicon Knights as developer and originator of Kain and prominent credit as originator in connection *with* any and all Kain derivative works and Kain products, irrespective of who developed these works. ¶ 29, 39. Defendants Crystal Dynamics, Dorosin, and Ardell repeatedly promised Silicon Knights that Defendant would comply with these terms, and memorialized its promises of Silicon Knights' right of first bid in writing in Paragraph 5.2 of the Kain Development Agreement. ¶ 29. Additionally, Silicon Knights accepted a lower percentage of Crystal Dynamics' net revenues as its sales royalty than was standard in the industry since Defendant Crystal Dynamics was acting as both a distributer and publisher of Kain. ¶ 32.

The complaint alleges that Crystal Dynamics made these promises without intent to perform, and breached the development agreement by: (1) adding increasingly stringent requirements to Silicon Knights' duties under the Kain Development Agreement while refusing to cooperate and respond to Silicon Knights' requests for assistance, resulting in several months of delay; (2) hindering Silicon Knights' ability to meet its deadlines under the agreement; (3) withholding royalty advances at critical stages of the Kain development and refusing to account for royalties in 45–day intervals as required by the Development Agreement; (4) secretly soliciting and employing third party contractors to "shadow" Silicon Knights' efforts in producing various versions of Kain and supplying these third parties with Silicon Knights' confidential, proprietary and trade secret information in an effort to eventually supplant Plaintiff as developer of Kain; and (5) making numerous other efforts and attempts to prevent Silicon Knights from performing and/or meeting its purported deadlines and duties under the Agreement. ¶ 40, 44, 45.

The complaint also alleges that Crystal Dynamics further breached its agreement with Silicon Knights in the Fall of 1996 by selling certain rights to Kain and all Kain derivative works to Activision for approximately $2 million dollars. ¶ 61. By entering into this agreement with Activision, Defendant abdicated its agreed role as publisher on the Kain project, which decreased the revenues payable to Silicon Knights to as little as 1/4 of the originally promised amount. ¶ 64. Defendant did grant Plaintiff a higher royalty percentage to compensate for the fact that Crystal Dynamics would not distribute Kain in a November 20, 1996 modification of the Kain Development Agreement. However, Crystal Dynamics failed to advise Silicon Knights of several aspects of the CD–Activision deal, including, but not limited to the fact that Activision would be taking over *both* the publication and distribution of Kain, and that Crystal Dynamics had fraudulently substituted itself as "developer" for Kain in the CD–Activision deal, which eliminated the potential for derivative work revenues to Silicon Knights as developer of any future Kain works. ¶ 67. Although Crystal Dynamics intended to exit the software publishing busi-

ness at this time, the complaint alleges that Crystal Dynamics, Dorosin, and Ardell did not inform Silicon Knights of this intention, but represented to Plaintiff both orally and in writing that; (a) Crystal Dynamics intended to remain a publisher; (b) that the CD–Activision Deal would transfer only the Kain "distribution rights" to Activision; and (c) that the CD–Activision Deal would not affect Crystal Dynamics' obligations under Section 5.2 of the Development Agreement concerning Silicon Knights' right of first bid to develop derivative works. ¶ 69. At the time Crystal Dynamics made these representations, it had fired most, if not all, of its publishing personnel as a part of its plan to leave the publishing business. ¶ 70.

Although Crystal Dynamics represented itself as developer of Kain and the derivative Kain II, Activision was allegedly displeased with Crystal Dynamics' work and approached other developers, including Silicon Knights, for potential assistance on the artwork for Kain II. Activision and Silicon Knights apparently entered into an agreement whereby Plaintiff would provide artwork for the game. Upon learning of this potential re-entry of Silicon Knights into Kain development, Defendants made false, misleading, and commercially disparaging statements about Silicon Knights' technical abilities and Silicon Knights' involvement in the creation and development of Kain to Activision and others in the video game industry. ¶ 76.

Crystal Dynamics also directly and indirectly solicited Silicon Knights' employees to leave and either join Crystal Dynamics or start one or more companies in competition with Silicon Knights to cripple and prevent Silicon Knights from performing its obligations under the SK–Activision Contract, to enable Crystal Dynamics to meet Activision's standards, and to develop derivative works on terms more favorable to Crystal Dynamics than the Kain Development Agreement. ¶ 80. These actions also induced Silicon Knights' employees to breach their non-disclosure and non-competition agreements with Plaintiff. ¶ 78, 81.

On July 3, 1997, Plaintiff filed a complaint against Defendant Crystal Dynamics seeking, *inter alia.*, rescission or reformation of the contract and damages for breach of contract. Additionally, the complaint asserts the following claims against Defendant Crystal Dynamics and some or all of the Individual Defendants: Statutory Unfair Competition, pursuant to Cal. Bus & Prof. C. § 17200 & 17500 et seq.; Common Law Unfair Competition; Intentional Interference with Contractual Relations with Silicon Knights' former employees; Intentional Interference with Contractual Relations with Activision; Intentional Interference with Prospective Economic Advantage with Activision; International Interference with Prospective Economic Advantage (generally); Negligent Interference with Economic Advantage (generally); Defamation and Commercial Disparagement; Fraud; and Negligent Misrepresentation.

### III. *LEGAL STANDARDS*

Pursuant to Rule 12(b)(6), F.R.Civ.P., a complaint may be dismissed for failure to state a claim upon which relief can be granted. For purposes of evaluating a motion to dismiss, the complaint is construed in the light most favorable to plaintiff and its allegations are taken as true. *Abramson v. Brownstein*, 897 F.2d 389, 391 (9th Cir.1990). However, the court need not accept as true conclusory allegations or legal characterizations cast in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981), *cert. denied*, 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981). Dismissal can be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1988); *Robertson v, Dean Witter Reynolds, Inc.* 749 F.2d 530, 533–34 (9th Cir.1984). The court may not consider matters outside the pleadings in ruling on a motion pursuant to Rule 12(b)(6). Rule 12(b)(6), F.R.Civ.P. However, the court may consider "the complaint and 'documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading.'" *In re Syntex Corp. Securities Litigation*, 95 F.3d 922, 926 (9th Cir.1996).

A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

As to those portions of a complaint which the court finds do not state a claim for relief, leave to amend is ordinarily given freely. Fed.R.Civ.P. 15(a). A complaint or any claim in it should be dismissed without leave to amend only if the deficiencies of the complaint cannot possibly be cured by amendment. *Doe v. United States,* 58 F.3d 494, 497 (9th Cir.1995).

## IV. DISCUSSION

### A. The allegations are sufficient to allege that Individual Defendants' directed the alleged wrongful acts.

In addition to challenging each claim asserted against the Individual Defendants on various substantive grounds, Individual Defendants challenge all claims asserted against them in the complaint on the grounds that personal liability cannot be conferred upon them based solely upon their roles as employees and officers of Crystal Dynamics, and that the complaint fails to allege any facts upon which Individual Defendants could be found personally liable for the claims asserted against them. Silicon Knights opposes this position, contending that the complaint alleges various fraudulent statements made by specific defendants, and that the complaint contains "detailed allegations . . . regarding the Individual Defendants' positions of control and authority at Crystal Dynamics, as well as the fact that each of the named defendants directed, controlled, participated in, or executed all, or virtually all, of the torts alleged in the complaint." Silicon Knights' Opposition to Amended motion to Dismiss Defendants Ardell, et al. ("Opposition"), p. 5:1–3.

As asserted by Plaintiff, under California law, "[d]irectors or officers of a corporation do not incur personal liability for the torts of the corporation merely by reason of their official position, unless they participate in the wrong or authorize or direct that it be done. They may be liable, under the rules for tort and agency, for tortious acts committed on behalf of the corporation. [Cites.]" *United States Liability Ins. Co. v. Haidinger–Hayes. Inc.,* 1 Cal.3d 586, 595, 83 Cal.Rptr. 418, 423, 463 P.2d 770, 775 (1970); See, also, *Wyatt v. Union Mortgage Co.,,* 24 Cal.3d 773, 785, 157 Cal.Rptr. 392, 399, 598 P.2d 45, 51–52 (1979).

Pursuant to Rule 8(a)(2), F.R.Civ.P, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief . . ." To assert claims against individual defendants, a complaint must contain allegations indicating how the defendant violated the law or injured the plaintiff' in order to survive a motion to dismiss. *Morabito v. Blum,* 528 F.Supp. 252, 262 (S.D.N.Y.1981); *Messina v. Mazzeo,* 854 F.Supp. 116 (E.D.N.Y.1994). Rule 8(a)(2) does not require that the complaint set forth a "defendant's precise role in the injurious conduct," but that defendants be "put on notice as to the nature of the allegations against them" and "their relationship to the actions at issue in the case." *Messina, supra.,* 854 F.Supp. at 126.

Consequently, "courts have consistently held that, where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss in regard to that defendant should be granted." *Morabito v. Blum,* 528 F.Supp. 252, 262 (S.D.N.Y.1981); See also, *Alfaro Motors. Inc. v. Ward,* 814 F.2d 883, 886 (2nd Cir.1987) ("Although the caption of appellants' complaint names as defendants Benjamin Ward, Police Commissioner of the City of New York, and Anthony Savarese, a sergeant in the New York City Police Department, the complaint is entirely devoid of any allegations of their personal involvement in denying appellants either a prompt hearing or the additional medallions sought. Having failed to allege, as they must, that these defendants were directly and personally responsible for the purported unlawful conduct, their complaint is 'fatally defective' on its face."); and *Kirkland v. Bianco,* 595 F.Supp. 797, 799–800 (S.D.N.Y.1984) (dismissing individual defendants from complaint where defendants were named in the caption, but the complaint provided no basis to ascertain how

defendants violated the law in some manner so as to injure plaintiff).

Courts have denied motions to dismiss a complaint against individual defendants where the complaint alleged that all defendants engaged in the alleged tortious acts, although the complaint did not set forth the specific acts committed by each defendant. *Brook v. Thornburgh,* 497 F.Supp. 560 (E.D.Pa.1980); *Messina v. Mazzeo, supra.,* 854 F.Supp. at 127.

■In this case, the complaint goes beyond merely identifying the Individual Defendants in the caption, but sets forth their respective positions within the corporation and alleges that "Crystal Dynamics acted by and through the other individual Defendants named herein" in "committing the fraudulent and otherwise wrongful actions alleged herein ...." Complaint ¶ 2. This allegation, coupled with specific acts of fraud and misconduct alleged throughout the complaint, is sufficient to inform individual defendants of their "relationship to the actions at issue in the case" and the basis of their alleged liability for the tort claims alleged in the complaint.

**B. Fifth and Sixth Causes of Action for Intentional Interference with Contractual Relations with Silicon Knights' Former Employees and Activision**

Individual Defendants contend that the complaint fails to allege sufficient facts to state a claim for Intentional Interference with Contractual Relations of Silicon Knights' contracts with either Activision or Silicon Knights' former employees. First, Defendants contend that the complaint fails to allege any action taken by Crystal Dynamics that "goes beyond the acceptable bounds of conduct in business rivalry" and "certainly no grounds for personal liability on the part of the individual defendants." Second, Defendants contend that the complaint fails to allege any specific facts showing that Silicon Knights had a duty not to do any business with any third parties for video game development, including Keyframe, or that the complaint alleges any facts to show Individual Defendants' specific intent to cause the breach or disruption of Silicon Knights' contracts with its former employees or Activision.

Plaintiff asserts that Defendants' contention that their acts were "within the acceptable bounds of business rivalry" goes to the merits, and not the sufficiency, of the complaint. Plaintiff also contends that the complaint alleges sufficient facts to show that Defendants' acts went beyond the realm of legitimate business purposes.

■ The following elements state a claim for intentional interference with contractual relationship under California law: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pacific Gas & Electric Co. v. Bear Stearns & Co.,* 50 Cal.3d 1118, 1126, 270 Cal.Rptr. 1, 4, 791 P.2d 587, 590 (1990).

■ The complaint sufficiently alleges facts necessary to establish a claim for tortious interference with Silicon Knights' contracts with its former employees. The complaint alleges that Plaintiff had a non-disclosure agreement with a former employee, Cranford, with respect to any confidential information Cranford received during his employment with Silicon Knights, as well as non-competition agreements with former employees Green, Ryan, and Cranford with respect to work performed on behalf of Silicon Knights on Kain. Complaint ¶ 78. Additionally, "Ryan had been designated in a 'Keyman Clause' as part of [a] recent development agreement which Silicon Knights had itself made with Activision for artwork on a game called 'Zork Grand Inquisitor.'" Complaint ¶ 79. The complaint alleges that Defendants Crystal Dynamics, Ardell, Dyer, Miller, and Horsely knew of the employees' agreements with Silicon Knights (Complaint ¶ 122), and that "Crystal Dynamics and one or more of the other individual Defendants began soliciting Silicon Knights' employees ... to leave Silicon Knights, for the purposes of: (1) crippling Silicon Knights; (2) preventing Silicon Knights from performing its obligations un-

der the SK–Activision Contract; (3) interfering with Silicon Knights' non-disclosure and non-competition agreements with its employees; (4) interfering with Silicon Knights' other contracts and potential commercial dealings; and (5) enabling Crystal Dynamics to negotiate with those former Silicon Knights employees to develop Kain derivative works on terms more favorable to Crystal Dynamics that the Kain Development Agreement . . ." Complaint ¶ 80. The complaint alleges specific acts undertaken by Crystal Dynamics to induce its employees' breach of their non-disclosure and non-competition agreements, such as "soliciting and financially assisting Cranford, Green, and Ryan to leave Silicon Knights' employment and start a competing business with Silicon Knights under the name Keyframe Digital Productions ("Keyframe") in breach of their respective non-competition and non-disclosure agreements with Silicon Knights" along with promises of future business, such as derivative works for Kain. *Id.* ¶ 81.

Pursuant to Rule 9(c), F.R.Civ.P., a complaint may generally aver malice, intent, knowledge, "and other condition of mind of a person." Therefore, Plaintiff's general allegations of Crystal Dynamics' knowledge of the underlying contracts, and its wrongful intent in interfering with the employees' contractual relationships with Silicon Knights is not fatal to the complaint.

The affirmative defense of "competitive privilege" is not apparent on the face of the complaint. The complaint does not merely allege that Crystal Dynamics' business relationship with Plaintiffs' former employees was wrongful. Instead, the complaint alleges that Crystal Dynamics intentionally interfered with Silicon Knights' contractual relations with its former employees, including non-competition and non-disclosure agreements, by inducing them to form a company that directly competed with Silicon Knights on the Kain project, for the purposes of improving its competitive position at the expense of the Silicon Knights. It is the act of inducing or interfering with the contract with an improper motive, and not the later act of

dealing with the party who breached the contract, that underlies the tort. *DeVoto v. Pacific Fid. Life Ins.*, 618 F.2d 1340, 1348 (9th Cir., 1980). The complaint satisfies Rule 8(a) requirements of setting forth "a short and plain statement of the claim showing that the pleader is entitled to relief" with respect to the Fifth Cause of Action for Intentional Interference with Contractual Relations: Contracts with Cranford, Green, and Ryan.

■ Although the Sixth Cause of Action contains similar allegations, the complaint does not satisfy Rule 8(a) requirements since there are no facts from which the court or defendants can infer that Silicon Knights' contract with Activision was actually disrupted or impeded, or that Silicon Knights suffered any damages as a result of Defendants' actions. All that can be inferred from the complaint is that Crystal Dynamics lured Ryan away from his employment with the wrongful intent of impeding or interfering with the Activision contract.[1] While the complaint does allege that "[b]ut for Defendants' actions, Ryan would have remained at Silicon Knights, and the SK–Activision contract would not have been affected" (Complaint ¶ 131), it does not state how the Activision contract was affected, or whether Silicon Knights incurred any detriment as a result of Individual Defendants' acts of interference.

Therefore, for the forgoing reasons, Defendants' motion to dismiss the Fifth Cause of Action for Interference with Contractual Relations as to Silicon Knights' former employees is DENIED, and Defendants' motion to dismiss the Sixth Cause of Action for Interference with Contractual Relations as to Activision is GRANTED with leave to amend.

### C. Seventh and Eighth Claims for Intentional Interference with Economic Relations

Defendants object to Plaintiff's claims for interference with prospective economic advantage with Activision (seventh claim) and other third parties (eighth claim), on the same basis asserted in their motion to dis-

---

1. The complaint states in conclusory terms that Defendants' acts of support, assistance, promises to, and dealings with Keyframe constitute material breaches of the Kain Development agree-

ments and other claims, and that "those acts have damaged and will continue to damage, Silicon Knights unless enjoined by the Court." Complaint ¶ 84.

miss the interference with contract claims, and on the grounds that a) the complaint does not allege that Individual Defendants "engaged in conduct that was wrongful by some measure other than the fact of interference itself," and b) the complaint does not allege an economic relationship containing the probability of future economic benefit.

Plaintiff asserts that the complaint alleges interference with Silicon Knights' work on Kain II with Activision (seventh claim) and that the "[c]omplaint again lays out (among other injuries) three specific Silicon Knights business relationships which the Individual Defendants have injured: Microsoft, Activision, and 3DO." Opposition, p. 13:10–14. Plaintiff further contends that "any sensible reading of the Complaint in this action demonstrates abundant independently 'wrongful' conduct by the Individual Defendants within the meaning of *Della Penna*" including misappropriation of trade secrets [2] and fraud and misrepresentation. Plaintiff also contends that the mere "potential" of an economic relationship is sufficient to assert the tort.

■ To support a cause of action for interference with prospective economic advantage, the following elements must be established: "(1) the existence of a specific economic relationship between [plaintiff] and third parties that may economically benefit [plaintiff]; (2) knowledge by the [defendants] of this relationship; (3) intentional acts by the [defendants] designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) damages to the [plaintiff]." *Rickards v. Canine Eye Registration Foundation, Inc.,* 704 F.2d 1449, 1456 (9th Cir.1983). The California Supreme Court has also stated that a plaintiff seeking to recover for alleged interference with prospective economic relations has the burden of pleading and proving that the defendant's interference was wrongful "by some other measure beyond the fact of interference itself." *Della Penna v. Toyota Motor Sales, U.S.A., Inc.,* 11 Cal.4th 376, 392,

45 Cal.Rptr.2d 436, 902 P.2d 740 (1995); *Li-Mandri v. Judkins,* 52 Cal.App.4th 326, 342, 60 Cal.Rptr.2d 539 (1997), reh/rev denied, April 16, 1997.[3]

■ "The law precludes recovery for overly speculative expectancies by initially requiring proof the business relationship contained 'the probability of future economic relationship.' (*Youst v. Longo* (1987) 43 Cal.3d 64, 71, 233 Cal.Rptr. 294, 729 P.2d 728)."*.Westside Center Associates v. Safeway Stores 23, Inc.,* 42 Cal.App.4th 507, 522, 49 Cal.Rptr.2d 793, 803 (1996). In *Westside,* the court held that the requirement that the plaintiff plead and prove that a business relationship contained the "probability of future economic benefit" to the plaintiff precluded application of the tort to "hypothetical relationships" not developed at the time of the allegedly tortious acts. See, also, *Roth v. Rhodes,* 25 Cal.App.4th 530, 546, 30 Cal.Rptr.2d 706, 715 (1994) (podiatrist denied space in defendants' medical building could have not existing relationship with speculative "future patients.")

As stated above, the complaint fails to assert facts sufficient to support a claim for intentional interference with prospective economic relationship with Activision since there is no factual allegation in the complaint that Silicon Knights' relationship with Activision was actually disrupted as a result of Crystal Dynamics and Individual Defendants' acts of inducing Silicon Knights' former employees to leave Plaintiff's employ, or what damages, if any, were incurred by Silicon Knights as a result of these acts.

■ With respect to the eighth claim for intentional interference with prospective economic relationship, the complaint fails to allege an economic relationship with any third party containing the probability of future economic benefit to the plaintiff. The complaint alleges that "Defendants have knowingly, intentionally, wrongfully, and maliciously, expressly and impliedly, misrepre-

---

2. The alleged misappropriation of trade secrets does not appear to be a basis for Plaintiff's claim for intentional or negligent interference with economic and/or contractual relations. Rather, Defendants' alleged defamatory remarks, Crystal Dynamics' claim that it developed Kain, and Defendants' inducement to Plaintiff's employees

to break their non-disclosure and non-compete agreements are the alleged wrongful acts set forth in the Eighth and Ninth claims.

3. See, also, BAJI 7.82, approved in *Della Penna, supra.,* 11 Cal.4th at 380, fn. 1, 45 Cal.Rptr.2d at 439, fn. 1, 902 P.2d at 743, n.1.

sented to Silicon Knights' customers, potential customers, industry and associates and the public (i) that Crystal Dynamics, not Silicon Knights, was and is the developer of Kain, and (ii) that Silicon Knights was technically incompetent and unable to provide creative software products in a timely fashion." Complaint ¶ 143. As a result of these "malicious" and "fraudulent assertion[s]," Defendants "induced and/or caused customers and potential customers not to purchase video game software and related products from Silicon Knights, and induced and/or caused other software publishers and distributors not to deal with Silicon Knights regarding video game software development packages and otherwise." *Id,* at ¶ 144. The complaint asserts that Defendants did "wrongfully interfere[ ] with Silicon Knights' reasonable expectation of trade and business relationships with customers, prospective customers, industry associates and the public," which includes, but is not limited to "Silicon Knights prospective economic advantage with Microsoft, Activision, and 3DO." *Id.* at ¶ 146; (alleging that misrepresentations were made to Microsoft personnel, Activision personnel, and 3DO personnel).

There are no allegations in the complaint from which the court or defendants could infer the probable disruption of an actual economic relationship by means of alleged defamatory statements of the individual defendants or by means of Crystal Dynamics' statement that it developed Kain. The complaint does not allege that Silicon Knights was in the midst of negotiations with 3DO, Microsoft, or any other publisher, and that the third party pulled out of the negotiations or awarded business to another because of these alleged acts by Defendants. Moreover, allegations that Defendants' undisclosed statements caused potential customers not to buy Silicon Knights' video game software asserts the type of speculative economic rela-

tionship disapproved of in *Westgate.* Even if interference with potential customers is a legitimate basis for tortious interference with economic relations, the complaint alleges only conclusory statements and no facts in support of its contention that it lost potential customers. For example, there is no allegation that sales of a particular software product identified with Silicon Knights decreased after these alleged statements were made by Crystal Dynamics.

Therefore, Defendants' motion to dismiss the seventh and eighth claims for intentional interference with economic relations is GRANTED with leave to amend.

## D. Ninth Claim for Negligent Interference with Prospective Economic Advantage

Defendants contend that the claim for negligent interference with prospective economic advantage fails for the same reasons set forth above, i.e., the complaint contains only speculative allegations of economic relationships. Defendants also assert that the complaint fails to state a claim upon which relief can be granted since Silicon Knights has not, and cannot, allege any contractual or statutory duty, or special relationship between Individual Defendants and Plaintiff that give rise to a duty of care. Defendants assert in their reply brief that the action is based upon an "unenforceable alleged oral agreement between Silicon Knights and Crystal Dynamics."

Plaintiff contends that "[a]s shown throughout the Complaint, the Individual Defendants' course of dealings established ... a fiduciary relationship." Opposition, p. 15. Plaintiff apparently is asserting that Defendants' alleged fraud and misrepresentation, and the foreseeability of harm these acts would cause to Silicon Knights, created a "special relationship" between Individual Defendants and Silicon Knights.[4]

---

4. Plaintiff asserts in its opposition: "As shown throughout the Complaint, the Individual Defendants' course of dealings with Silicon Knights established just such a fiduciary relationship. Perhaps the most prominent example of the relationship, and its breach, is the Defendants' misappropriation and wrongful disclosure of Silicon Knights' confidential and trade secret information as it pertained to the development of

Kain.... Similarly, unlike the Complaint in this case, the complaint in *Orion* contained no allegations of 'any contractual or statutory duty owed by [defendant],' nor any allegation of a 'special relationship that might give rise to a duty.' " *Id.* Such allegations are clearly present here, particularly since such a "relationship" can be assessed by "the foreseeability of harm suffered by plaintiff." Opp., p. 15.

■ "The tort of negligent interference with economic relationship arises only when the defendant owes the plaintiff a duty of care. *J'Aire Corp. v. Gregory* (1979) 24 Cal.3d 799, 803, 157 Cal.Rptr. 407, 598 P.2d 60 (1979)" *Stolz II v. Wong Communications Limited Partnership,* 25 Cal.App.4th 1811, 31 Cal.Rptr.2d 229 (1994), reh/rev denied, September 29, 1994; *LiMandri v. Judkins,* 52 Cal.App.4th 326, 348, 60 Cal.Rptr.2d 539, 551 (1997), reh/rev. denied April 16, 1997. This duty may arise from a contractual, statutory, or "special relationship" between the plaintiff and defendant. This "special relationship" typically arises where the plaintiff is a beneficiary of a contract between two parties. *Devoto v. Pacific Fidelity Life Ins. Co.,* 618 F.2d 1340, 1350 (9th Cir.1980). In *J'Aire Corporation v. Gregory,* 24 Cal.3d 799, 804, 157 Cal.Rptr. 407, 410, 598 P.2d 60, 61–63 (1979), the California Supreme Court stated that the following criteria would be used in determining whether defendants owe plaintiff of duty of care: "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct and (6) the policy of preventing future harm."

■ Plaintiff's cause of action for negligent interference with economic relations fails to state a claim since the complaint does not allege the existence of a specific economic relationship between Crystal Dynamics and third parties that could have economically benefitted Silicon Knights but for Individual Defendants' wrongful conduct. Moreover, the complaint fails to allege any duty that Defendants owed to Plaintiff to refrain from taking the alleged actions. Plaintiff cites no authority for its contention that a wrongful act by a defendant, without more, constitutes a "special relationship" for which a defendant may be held liable for negligent interference with prospective economic advantage. If this were the state of the law, then any claim for negligent interference with prospective economic advantage would necessarily be subsumed within the tort of intentional interference with economic relations, and the requirement of a "special rela-

tionship" or other duty would be meaningless.

Therefore, Individual Defendants' motion to dismiss the Ninth Cause of Action for Negligent Interference with Economic Advantage is GRANTED with leave to amend.

### E. Tenth Claim for Defamation and Commercial Disparagement

■ Individual Defendants contend that the tenth cause of action for defamation fails because the complaint does not identify any defamatory matter expressed or conveyed by the Individual Defendants and that the complaint contains no allegation of special damages. Defendants also contend that the only defamatory matter specified in the complaint and set forth in exhibits A and B cannot be construed as defamatory statements.

In its opposition, Silicon Knights does not contend that statements contained in the exhibits to the complaint are defamatory. Instead, Plaintiff contends that the complaint "identifies a number of other specific defamatory and disparaging statements made by the Individual Defendants, including false statements about Silicon Knights' original development of Kain (Complaint ¶ 21), similar false statements about Silicon Knights' technical capabilities and ability to deliver products in a timely fashion (Complaint ¶ 76), and specific statements by at least Defendant Dyer to employees of Microsoft concerning similar issues (Complaint ¶ 91)." Opp., p. 16. Plaintiff also asserts that allegations of special damages are not necessary since the statements are defamatory on their face.

The statements in the complaint identified as defamatory by Plaintiff include the allegation that Crystal Dynamics has refused to give proper originator and developer credit for Kain (¶ 21); that Defendants engaged in wrongful conduct by "making false, misleading, and commercially disparaging statements about Silicon Knights' involvement in the creation and development of Kain to Activision (and others in the video game industry)" (¶ 76); and by making "false and defamatory statements to several of Silicon Knights' customers, prospective customers, industry associates and the public regarding: (a) the quality and reliability of Silicon

Knights' products, (b) the competence and ability of Silicon Knights' employees, and (c) Silicon Knights' cooperation and ability to work with customers, suppliers, or other persons in the software industry." Some or all of these statements were allegedly made by Dyer to Microsoft personnel, and by other defendants to Activision and 3DO personnel. (Complaint ¶ 91.)

■■■■ "The words constituting a libel or slander must be specifically identified, if not plead verbatim." *Chabra v. S. Monterey County Memorial Hospital, Inc.*, 1994 WL 564566, *6 (N.D.Cal.1994), citing *Kahn v, Bower*, 232 Cal.App.3d 1599, 284 Cal.Rptr. 244, 252, fn. 5, reh/rev denied (1991). While the exact words or circumstances of the slander need not be alleged to state a claim for defamation, the substance of the defamatory statement must be alleged. *Okun v. Superior Court (Maple Properties)*, 29 Cal.3d 442, 458, 175 Cal.Rptr. 157, 167, 629 P.2d 1369, 1379 (1981) The complaint contains only general allegations of the defamatory statements and does not identify the substance of what was stated by the Defendants. Further, as currently alleged, the statements appear to be expressions of opinion rather than factual assertions. *Id.*

Therefore, Individual Defendants' motion to dismiss the Tenth Claim for Defamation is GRANTED with leave to amend.

### F. Thirteenth and Fourteenth Claims for Fraud and Negligent Misrepresentation

■■■ Individual Defendants contend that Silicon Knights' allegations of fraud and negligent misrepresentation are refuted by the express terms of the Kain Development Contract and written amendments. Defendants contend that Plaintiff's failure to attach copies of the relevant agreements at issue, while omitting material terms, renders the complaint subject to dismissal. Defendants contend that the Development Agreement does not prohibit or restrict Crystal Dynamics from entering into any agreement with Activision or any third party concerning the distribution, marketing, or sales of Kain. Even if there were such an agreement, Defendants contend that the Amendment to the Development Agreement, dated November 20, 1996, expressly released any possible liability for Crystal Dynamics' transfer of Kain distribution rights to Activision, in exchange for an increase in Silicon Knights' royalty percentage to 42.8%. Defendants also contend that the allegations of fraud are not stated with particularity, as required by Rule 9(b), F.R.Civ.P.

Plaintiff contends that the November 20, 1996 amendments cited by Defendants only release Crystal Dynamics from liability with respect to the CD–Activision deal, and that several additional grounds for liability of the Individual Defendants are alleged in the complaint. Plaintiff also contends that this release was procured from Silicon Knights by fraud, misrepresentation, and other wrongful conduct of the Individual Defendants and Crystal Dynamics.

Plaintiff does not assert the substance of any of alleged fraudulent statements and/or omissions in its thirteenth and fourteenth claims for fraud and negligent misrepresentation. Instead, the alleged fraudulent statements and omissions are scattered throughout the complaint's "common factual allegations."

Among the fraudulent statements and/or omissions made by Crystal Dynamics and Individual Defendants that form the basis for the fraud and negligent misrepresentation claims are that Crystal Dynamics induced Silicon Knights to enter into the Development Agreement by promising potential substantial later royalties from Silicon Knights' development of Kain derivative works and publication credits identifying Silicon Knights as developer of Kain. The complaint alleges that Defendants Crystal Dynamics, Dorosin, and Ardell repeatedly promised Silicon Knights that Crystal Dynamics would comply with both of these terms, but that "it now appears that Crystal Dynamics never had any intention of keeping those promises ..." Complaint ¶ 29, 30. The complaint also alleges that Silicon Knights entered the agreement which gave it a smaller percentage of royalties since Crystal Dynamics represented to Silicon Knights that Crystal Dynamics would be both publisher and distributor of Kain, and that Plaintiff would stand to make a greater profit from Kain. Complaint ¶ 32. To induce Silicon Knights to enter into the

November 1996 amendments, the complaint alleges that Crystal Dynamics failed to advise Silicon Knights of numerous aspects of the CD–Activision Deal, including, but not limited to the fact that Activision would be taking over both publication and distribution of Kain, that Silicon Knights' royalties would be "dramatically" reduced as a result, and the fact that Crystal Dynamics substituted itself as developer for Kain in the CD–Activision deal, which "de facto" eliminated any potential for derivative work revenues to Silicon Knights as developer of any future Kain works. Complaint ¶ 67.

■ The alleged fraudulent statements are not plead in compliance with. Rule 9(b) F.R.Civ.P. Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." To satisfy this heightened pleading requirement, the complaint must "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Advanced Cardiovascular Systems v. Medtronic, Inc.*, 41 U.S.P.Q.2d 1770, 1775 (N.D.Cal.1996) (quoting *Schreiber Distributing v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986)). The Ninth Circuit has stated that "allegations of fraud [must be] specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Chiron Corp. v. Abbott Laboratories.*, 156 F.R.D. 219, 222 (N.D.Cal.1994), quoting Neubronner v. Milken, 6 F.3d 666, 671 (9th Cir.1993).

None of the complaint's allegations of fraud state the time, place and manner of the alleged misrepresentations. Furthermore, only a few of the alleged misrepresentations identify the person who made the statement. Since fraud must be alleged in particularity,

a general allegation that all Individual Defendants directed that the alleged fraudulent statements be made is insufficient to assert liability upon persons who did not make the statements. Additionally, there are no allegations upon which the Individual Defendants could be held personally liable for alleged omissions of material facts, since only Crystal Dynamics was a party to the alleged contract.

Therefore, Defendants' motion to dismiss the Thirteenth and Fourteenth Claims for Fraud and Negligent Misrepresentation is granted with leave to amend. Should Plaintiff decide to amend the complaint, all elements of fraud, including the time, place, manner and identity of the person making the fraudulent statements, shall be stated within the claim itself and not merely incorporated by amendment.[5]

## G. Third and Fourth Claims for Statutory Unfair Competition and Common Law Unfair Competition

Individual Defendants contend that Plaintiff has failed to state any facts to support its claim for statutory unfair competition or common law unfair competition, Claims HI and IV, asserting that the claims consist of "nothing but conclusory allegations of fraud, misappropriation of trade secrets, and equally vague claims of interference with business relations." Memorandum of Points and Authorities in Support of Motion to Dismiss Individual Defendants, p. 6:7–14. Defendants also assert that the complaint fails to identify any trade secrets proprietary to Silicon Knights that Crystal Dynamics misappropriated, and that all intellectual property rights in Kain were transferred to Crystal Dynamics, pursuant to agreement between the parties. Defendants also contend that the unfair competition claim cannot rest upon the Crystal Dynamics–Activision Deal since

---

5. In their Reply, Individual Defendants also contend that any claims based upon an alleged oral agreement to give Silicon Knights prominent credit as originator and developer of the Sony PlayStation version of Kain, and prominent credit as originator in connection with any and all Kain derivative works would be barred by the statute of frauds as an agreement that by its terms cannot be performed within one year. Without any authority, Defendants conclude that

Silicon Knights cannot base any of its non-contractual tort actions (i.e., fraud, interference, unfair competition, or defamation) against Individual Defendants based upon this alleged oral statement. The challenged claims do not attempt to enforce this agreement under contract, but state that these promises were fraudulently made with the intent to induce Plaintiff to enter into a development agreement with Crystal Dynamics.

the Development Contract provides that "Crystal [Dynamics] will make, in its sole discretion, all decisions concerning the production, distribution, and marketing of the Work." Likewise, the November 1996 Amendments discharged Crystal Dynamics from "any and all claims, actions, or causes of action which the Developer might have ... based upon the claim or contention that Crystal was not authorized under the [Kain Development] Agreement or otherwise to enter the arrangement with Activision." Moving, p. 6.

Relying solely upon the rest of the claims in the complaint, Plaintiff asserts that "the Complaint does contain an abundance of factual detail regarding the conduct of the Individual Defendants, and any assertion that the Complaint does not allege any 'wrongful' or 'unlawful' conduct within the meaning of Cal. Bus. & Prof Code § 17200 is patently defeated by any reading of the Complaint." (Opposition, p. 10.)

 A plaintiff alleging unfair business practices under the unfair competition statutes "must state with reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's of California*, 14 Cal.App.4th 612, 619, 17 Cal. Rptr.2d 708, 712 (1993). Since most of Plaintiff's causes of action fail to state claims for relief against Individual Defendants, there is no underlying basis for the unfair competition claims as alleged against these Defendants. Moreover, allegations based upon misappropriation of trade secrets fail to identify the "fraudulent circumstances under which these trade secrets where disclosed" or how Crystal Dynamics' possession or use of source code, game engines and "other source materials" is wrongful when the Development Agreement grants to Crystal Dynamics all rights in the ownership and derivative works.[6]

Therefore, Defendants' motion to dismiss the Third and Fourth Claims for Unfair Competition is GRANTED with leave to amend.

## V. CONCLUSION

For the reasons set forth above, Individual Defendants' motion to dismiss Plaintiffs' complaint is GRANTED IN PART AND DENIED IN PART as follows:

1. The complaint's allegations that Individual Defendants' directed the alleged wrongful acts is sufficient to assert liability of the Individual Defendants under Rule 8(a)(2), F.R.Civ.P., general pleading requirements, but is not sufficient to assert liability against individual defendants for the fraud and negligent misrepresentation claims, which are subject to a heightened pleading requirement pursuant to Rule 9(b).

2. Individual Defendants' motion to dismiss the Fifth Claim for Interference with Contractual Relations as to Silicon Knights' former employees is DENIED.

3. Individual Defendants' motion to dismiss the Third and Fourth Claims for Statutory and Common Law Unfair Competition, Seventh Claim for Interference with Prospective Economic Advantage with Activision, Eighth Claim for Interference with Prospective Economic Advantage with other third parties, Ninth Claim for Negligent Interference with Prospective Economic Advantage, Tenth Claim for Defamation and Commercial Disparagement, Thirteenth Claim for Fraud, and Fourteenth Claim for Negligent Misrepresentation is GRANTED with leave to amend.

Plaintiff may file and serve an amended complaint within 30 days.

IT IS SO ORDERED.

---

**6.** This is not to say that Plaintiff cannot allege how Defendants' use of Silicon Knights' alleged trade secrets abrogated the agreement and constituted unfair competition.